UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11360-DPW

SUTRA, INC., )
)
    Plaintiff, )
)
v. )
)
ICELAND EXPRESS, EHF, )
)
    Defendant. )

**MEMORANDUM OF LAW OF DEFENDANT
ICELAND EXPRESS, EHF IN SUPPORT OF ITS MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

The Defendant, Iceland Express, ehf, hereby submits this Memorandum of Law in support of its Motion to Dismiss for Lack of Personal Jurisdiction.

## I. BACKGROUND

On or about December 10, 2002, the Plaintiff, Sutra, Inc. ("Sutra"), and the Defendant, Iceland Express, ehf ("Iceland Express"), entered into an Airkiosk System Application Service Provider Agreement (the "Agreement"), pursuant to which Sutra agreed to grant Iceland Express access to Sutra's computerized airlines reservations system known as the "Airkiosk System." Complaint, Exh. A.

In Count I of its Complaint in this action, Sutra asserts a claim for breach of contract, alleging that Iceland Express breached the Agreement by failing to maintain staff and agent authorization and sign-in level security; by failing to ensure that the Airkiosk System was operated only by properly trained and qualified staff in Iceland; by failing to protect and keep confidential the trade secrets of Sutra in Iceland; and by using,

transmitting, modifying or reproducing for the benefit of third parties information which was stored in the documentation, programs or databases of the Airkiosk System, in Iceland. Complaint, at ¶¶ 21-24. In Count II of its Complaint, Sutra alleges that Iceland Express misappropriated trade secrets relative to the Airkiosk System in Iceland. Id., at ¶ 27. As a result of Iceland Express's alleged breach of contract and misappropriation of Sutra's trade secrets, Sutra alleges that it has suffered damages in excess of $75,000. Complaint, at ¶¶ 21-25.

Iceland Express denies any liability, and contends that the Airkiosk System never functioned properly. Answer; Declaration of Gunnar Nielsson, at ¶ 15. Additionally, Iceland Express asserts by way of affirmative defense that this Court lacks personal jurisdiction over the Defendant. Answer, at 6.

## II. FACTS

Iceland Express is in the business of operating an airline, offering only three flight routes, all originating in Iceland, flying to Copenhagen Denmark, London England and Hahn Germany. Nielsson Declaration, at ¶ 5. Iceland Express is incorporated in the Republic of Iceland, with a principal place of business at Sudurlandsbraut 24, IS-108 Reykjavík, Iceland. Complaint, at ¶ 4; Answer, at ¶ 4; Nielsson Declaration, at ¶ 3. The shareholders of Iceland Express are all either of Icelandic nationality or companies of Luxembourg nationality controlled by Icelandic nationals, and the only offices of Iceland Express are located in Iceland. Nielsson Declaration, at ¶¶ 3-4.

Iceland Express has no operations outside of Europe, and it has never had any operations in Massachusetts. It has never advertised its operations or services in Massachusetts, nor does it derive any revenue from activities in Massachusetts. By the

same token, Iceland Express has no real property in Massachusetts, uses no real property in Massachusetts and has no interest in using or possessing real property in Massachusetts. Nielsson Declaration, at ¶¶ 5, 7-9.

The parties negotiated the Agreement by correspondence, e-mails and faxes, and no meetings ever took place during the negotiation phase. Sutra faxed a signed copy of the contract to Iceland Express in Iceland, and Iceland Express signed the Agreement in Iceland. Thereafter, the parties started cooperation under the terms of the Agreement. Nielsson Declaration, at ¶ 11; Complaint, Exh. A, at 16.

In exchange for access to the Airkiosk System, Iceland Express agreed to pay Sutra an initial sum of $20,000, plus a service charge of $1,500 per month, covering the processing of up to 9,000 revenue passengers boarded per month, but no more than a total 100,000 revenue passengers boarded in any consecutive twelve month period. Processing in excess of these limits was to be charged at the rate of 20 cents per additional revenue passenger boarded in Iceland, Denmark, England and Germany. Complaint, Exh. A, at Article 5.1-5.2. Iceland Express was responsible under the Agreement for all site preparations in Iceland to enable proper connection in Iceland to the Airkiosk System, including purchasing and installing equipment and Internet communication facilities in Iceland. Id., Exh. A, at Article 3.2.A-C.

Although Sutra was responsible under the Agreement for the initial loading of Iceland Express's data into the Airkiosk System, Iceland Express was thereafter responsible for loading and maintaining the data required for its operation in Iceland, including but not limited to inventory, schedules, fares, offices and user access and authorization information. Id., Exh. A, at Article 3.5. Additionally, Sutra agreed to send

3

to Iceland Express in Iceland, interface guide documentation in electronic format; and to provide Iceland Express two days of training, either at Sutra's offices or a location provided by Iceland Express. Id., Exh. A, at Article 2.2.A.-C. and E. In this latter regard, Iceland Express sent two employees to train at Sutra's premises for three or four days. No other Iceland Express employees ever traveled to Massachusetts for matters related to or arising from the contract with Sutra. Nielsson Declaration, at ¶ 12.

Apart from permitting Iceland Express to have access to the Airkiosk System – which Sutra provided to Iceland Express "complete and as is in commercial use," – for a period of twelve months, the only contractual obligation requiring the performance of continuing activities on Sutra's part involved the provision of functional and technical support, to be rendered to Iceland Express in Iceland via email and telephone communications. Id., Exh. A, at Articles 2.2.a-C., 2.3.A. and 7.2. For matters that did not require immediate attention, Iceland Express would send questions to a specific e-mail address. For more urgent problems, Iceland Express was given a hotline telephone number. Nielsson Declaration, at ¶¶ 13.

### III. ARGUMENT

A. **STANDARD UNDER FED. R. CIV. P. 12(B)(2)**

When a motion to dismiss for lack of personal jurisdiction is filed under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of proving the existence of personal jurisdiction." Merced v. JLG Industries, Inc., 170 F.Supp.2d 65, 69 (D.Mass. 2001), citing, Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir.1995). In considering the defendant's motion to dismiss, this Court "employs the *prima facie* standard under which the Court considers whether the plaintiffs have proffered evidence

4

that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Merced, 170 F.Supp.2d at 69, quoting, Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir.1992). In determining whether a *prima facie* showing has been made, the Court "does not act as a factfinder, but instead 'accepts properly supported proffers of evidence by a plaintiff as true.'" Merced, 170 F.Supp.2d at 69, quoting, Boit, 967 F.2d at 675. "Therefore, while allegations of fact in an uncontroverted affidavit must be accepted as true for the purposes of a Rule 12 motion, the plaintiff . . . bears the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant." Merced, 170 F.Supp.2d at 69, citing, Stanton v. AM General Corp., 50 Mass. App. Ct. 116, 117 (2000). The Court then "add[s] to the mix facts put forward by the defendant[], to the extent that they are uncontradicted." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir.), cert. denied, 537 U.S. 1029, 123 S.Ct. 558, 154 L.Ed.2d 444 (2002).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Daynard, 290 F.3d at 51, quoting, Sawtelle v. Farrell, 70 F.3d 1381, 1385-86 (1st Cir.1995). "Under Massachusetts law, jurisdiction over a nonresident defendant is appropriate if it is both authorized by statute and consistent with the due process requirements of the United States Constitution." Merced, 193 F.Supp.2d at 292, citing, Good Hope Indus., Inc. v. Ryder Scott, Co., 378 Mass. 1, 5-6 (1979); Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 712 (1st Cir.1996). See also, Daynard, supra, 290 F.3d at 52 ("To establish personal jurisdiction, [plaintiff] must show that the Massachusetts long-arm statute grants jurisdiction and, if it does, that the exercise of jurisdiction under

5

the statute is consistent with the constitution."). "Jurisdiction is authorized only where the answer to both inquiries is yes." <u>Cunningham v. Ardrox, Inc.</u>, 40 Mass. App. Ct. 279, 281 (1996), citing, <u>Good Hope Indus., Inc. v. Ryder Scott Co.</u>, 378 Mass. at 6.

Since the Massachusetts long arm statute, Mass. Gen. L. ch. 223A, functions as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States, the two questions tend to converge." <u>Good Hope</u>, 378 Mass. at 6. "General Laws c. 223A, § 3, cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements. <u>Id.</u> Similarly, "G.L. c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established." <u>Id.</u> Accordingly, "[a]lthough presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites." <u>Id.</u>

B.  **THE LONG ARM STATUTE DOES NOT AUTHORIZE PERSONAL JURISDICTION AND, THEREFORE, THE COMPLAINT MUST BE DISMISSED BECAUSE ICELAND EXPRESS DOES NOT TRANSACT ANY BUSINESS, CONTRACT TO SUPPLY SERVICES OR THINGS, OR HAVE AN INTEREST IN REAL PROPERTY, IN MASSACHUSETTS**

Iceland Express is not subject to personal jurisdiction under the relevant provisions of the Massachusetts long arm statute because Iceland Express does not transact any business or contract to supply services or things in Massachusetts, nor does Iceland Express have any interest in using or possessing real property in Massachusetts.

The Massachusetts long arm statute provides, in relevant part, that a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:

6

>"(a) transacting any business in this commonwealth;
>
>"(b) contracting to supply services or things in this commonwealth; . . .
>
>(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
>
>"(e) having an interest in, using or possessing real property in this commonwealth. . . ."

Mass. Gen. L. ch. 223A, § 3.

Under facts similar to the present case, the Court of Appeals for the First Circuit held in Lyle Richards International, Ltd. v. Ashworth, Inc., 132 F.2d 111, 113 (1st Cir. 1997), that the defendant's "purely incidental contacts . . . were insufficient to support an assertion of personal jurisdiction over [the defendant]." In that case, the plaintiff, a Massachusetts corporation, and the defendant, a Delaware corporation with a principal place of business in California, entered into a one-year contract, pursuant to which the plaintiff agreed to act as the defendant's purchasing agent for footwear manufactured in China and Taiwan. Significantly, the contract did not require the defendant to undertake any specific contractual responsibilities in Massachusetts. The plaintiff argued that the defendant had transacted business in Massachusetts because the defendant had, among other things, periodically forwarded purchase orders to the plaintiff in Massachusetts; communicated with the plaintiff two or three times a week regarding ongoing contract performance; and accompanied the plaintiff to three trade shows in Massachusetts. Id. at 112. In affirming the dismissal of the action for lack of personal jurisdiction, the Court of Appeals noted that most performance required under the agreement was "to be rendered

*outside* Massachusetts . . ." and, therefore, the "performance of various attendant chores in Massachusetts was incidental to the formation of the agreement." Id. at 113 (emphasis in original).

Similarly, in <u>Automatic Sprinkler Corp. of America v. Seneca Foods Corp.</u>, 361 Mass. 441, 446 (1972), the Massachusetts Supreme Judicial Court held that the defendant's contacts with Massachusetts were insufficient to confer personal jurisdiction under the long arm statute where the defendant's only contacts with Massachusetts consisted of the affirmance of a contract and the making of partial payments pursuant to the contract through the mails. In that case, the defendant's agent signed a purchase order in New York and mailed it to the plaintiff in Massachusetts. Thereafter, the defendant in New York received the plaintiff's invoice mailed from Massachusetts, as well as another letter acknowledging and accepting the defendant's purchase order. Id. at 444. In holding that these contacts were insufficient to afford jurisdiction under Mass. Gen. L. ch. 223As 3(a), the Court opined that the defendant's activity had little impact on commerce in Massachusetts, and concluded that the defendant did not "purposefully (avail) itself of the privilege of conducting activities within the forum State." Id. at 446.

In <u>Nichols Associates, Inc. v. Starr</u>, 4 Mass. App. Ct. 91, 97 (1976), the Massachusetts Appeals Court ruled that the defendant was not transacting business in Massachusetts for purposes of Mass. Gen. L. ch. 223A, § 3, where the defendant, a Connecticut-based land developer, never traveled to the plaintiff's offices but communicated by telephone with the plaintiff or in person when the latter's representatives were in Connecticut, and where invoices and completed work done in the plaintiff's Massachusetts office were mailed to the defendant in Connecticut. 4 Mass.

App. Ct. at 94-95.

Finally, in <u>Droukas v. Divers Training Academy, Inc.</u>, 375 Mass 149 (1978), the SJC held that the defendant, a Florida corporation with no offices or assets in Massachusetts, had not transacted business in Massachusetts where the plaintiff purchased two marine engines from the defendant in response to the defendant's advertisements in a trade magazine distributed in Massachusetts. <u>Id.</u> at 151. There, the transaction came about as follows:

> The plaintiff, in Massachusetts, telephoned the defendant's place of business in Florida, spoke with its president, and ordered the engines. Thereafter, the plaintiff forwarded a check for the purchase price to the defendant. The defendant's president sent a letter to the plaintiff in Massachusetts confirming the sale. Several other letters sent by the defendant relative to the sale were received by the plaintiff in Massachusetts. Subsequently, the defendant shipped the engines ['collect'] from Florida to Massachusetts.

<u>Id.</u> In holding that these contacts were insufficient to assert jurisdiction under Mass. Gen. L. ch. 223A, § 3(a), the SJC pointed out that the defendant's conduct had only a "slight effect on the commerce of the Commonwealth" and was "void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State." <u>Id.</u> at 154. The <u>Droukas</u> transaction, therefore, was an isolated one lacking a justifiable ground on which to assert jurisdiction. <u>Id.</u> See also, <u>Intech, Inc. v. Triple "C" Marine Salvage, Inc.</u>, 2005 WL 927441, *4 (Mass. April 25, 2005) (no continuing relationship amounting to transacting business notwithstanding that defendant advertised in two trade journals circulated in Massachusetts, separately sold two amphibious vehicles to plaintiff, agreed to help find the second amphibious vehicle, and contacted plaintiff by telephone to initiate second sale).

Similar to the defendants in <u>Lyle Richards</u>, <u>Automatic Sprinkler</u>, <u>Nichols</u> and <u>Droukas</u>, in this case Iceland Express does not transact any business, contract to supply services or things, or have any interest in any real property, in Massachusetts. Indeed, Iceland Express operates only three flight routes, all originating in Iceland, flying to Copenhagen Denmark, London England, and Hahn Germany. <u>Id.</u> at ¶ 5. Moreover, Iceland Express is a corporation organized and existing under the laws of Iceland, with a principal place of business in Reykjavík, Iceland. <u>Complaint</u>, at ¶ 4; <u>Answer</u>, at ¶ 4; <u>Nielsson Declaration</u>, at ¶ 3. Further, Iceland Express derives no income from Massachusetts; has never advertised in Massachusetts; ad has no interest of any kind in real property located in Massachusetts. <u>Id.</u> at ¶¶ 7-9.

Likewise, Iceland Express cannot reasonably be deemed to have transacted business in Massachusetts by virtue of its Agreement with Sutra because, as in <u>Lyle Richards</u>, <u>Automatic Sprinkler</u>, <u>Nichols</u> and <u>Droukas</u>, the Agreement in this case amounts to an isolated transaction that does not call for continuing performance of any activities in Massachusetts, and the effect of this transaction on Massachusetts commerce is minimal at best. Indeed, in this case all of the parties' contract negotiations were conducted by written correspondence, e-mail and fax, and no meetings ever took place in Massachusetts. Sutra faxed a signed copy of the Agreement to Iceland Express in Iceland, and Iceland Express subsequently signed the Agreement in Iceland. <u>Id.</u>, at ¶ 11; <u>Complaint</u>, Exh. A, at 16. Although the Agreement called for Sutra to render functional and technical support services to Iceland Express, such services were to be rendered via email and telephone communications to Iceland Express, in Iceland. Indeed, the full extent of Iceland Express's activities in Massachusetts was limited to sending two of its

employees to Sutra's office for training, and sending payments to Sutra in accordance with the Agreement. Id., at ¶ 12. Pursuant to Lyle Richards, Automatic Sprinkler, Nichols and Droukas, these activities are insufficient to establish that Iceland transacted business in Massachusetts.

Finally, because Iceland Express does not regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, here in Massachusetts, Sutra's allegation that Iceland Express misappropriated its trade secrets is an insufficient basis for exercising personal jurisdiction under Mass. Gen. L. ch. 223A, § 3(d).

C.  **SUTRA'S COMPLAINT MUST BE DISMISSED BECAUSE ICELAND EXPRESS LACKS THE REQUISITE MINIMUM CONTACTS WITH MASSACHUSETTS FOR PURPOSES OF SATISFYING DUE PROCESS REQUIREMENTS**

For the reasons stated below, Iceland Express has not purposefully availed itself of the privilege of conducting activities within Massachusetts, thus invoking the benefits and protections of its laws. Therefore, Iceland Express lacks the requisite minimum contacts with Massachusetts, and this Court may not exercise jurisdiction over Iceland Express without offending the requirements of due process.

As stated above, where a party seeks to bring an action in Massachusetts against a non-resident party to a contract, it is the plaintiff who has the burden of showing "certain minimum contacts with [Massachusetts] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Droukas, 375 Mass. at 152, citing, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 94 (1945). Where, as here, a plaintiff seeks to establish personal jurisdiction over a nonresident defendant who has not agreed to it by contract, the plaintiff must prove

"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Leasecomm Corp. v. Crawford, 2003 WL 1826537, *3 (Mass.App.Div. 2003), citing, Droukas, 375 Mass. at 153; Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Where a defendant has purposefully availed itself of the privilege of conducting activities within Massachusetts, thus invoking the benefits and protections of its laws, our courts have held that such defendant "'should reasonably anticipate being haled into court [here].'" New England Welding Contractors, Inc. v. Hydra-Machinery Sales, Inc., 704 F.Supp. 315, 317 (D.Mass. 1989), quoting, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[T]he effect of a nonresident's activity on the commerce of the Commonwealth is still an important factor to be considered in deciding the sufficiency of contacts with Massachusetts." Droukas, 375 Mass. at 154 n. 5. Finally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daynard, 290 F.3d at 52, quoting, Int'l Shoe Co. v. Washington, 326 U.S. at 316; Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998).

It is well-settled, however, that "[w]here an out-of-state party contracts with a resident of the forum state, that contract *alone* does not establish sufficient minimum contacts." New England Welding, 704 F.Supp. at 317, citing, Beaver Builders v. Schnip Building, 622 F.Supp. 1051, 1055 (D.Mass. 1985) (emphasis in original). Where, as here, the claim arises from an alleged breach of contract, a finding of personal jurisdiction requires an "evaluation of the relations between the parties, their respective

activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and Commonwealth of Massachusetts." Energy Capital and Services LP, II v. Hill Refrigeration, Inc., 989 F.Supp. 353, 355 (D.Mass. 1997), citing, Telco Communications, Inc. v. New Jersey State Firemen's Mut. Benevolent Ass'n, 41 Mass. App. Ct. 225 (1996). The court must "look at all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." Energy Capital, 989 F.Supp. at 355, citing, Ganis Corp. of California v. Jackson, 822 F.2d 194, 197-98 (1st Cir. 1987). See also, A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F.Supp. 39, 43 (D.Mass. 1990) (court must look at all communications and transactions between parties, before, during and after consummation of contract, to determine degree and type of contacts defendant has with forum, apart from contract alone).

  Applying these principals under circumstances similar to this case, this Court held in New England Welding that due process requirements were not satisfied where the defendant's only contact with the Commonwealth was an "isolated transaction with its attendant negotiations and communications. . . ." 704 F.Supp. at 317. The parties in that case – a Massachusetts buyer and a South Carolina seller – entered into an agreement regarding the sale of certain used equipment. It was undisputed that the seller advertised in national trade journals and that there were many telephone calls and much correspondence concerning the transaction. The plaintiff sued to recover its initial $25,000 deposit when the defendant failed to deliver the equipment by the agreed upon date.

In dismissing the case, the Court distinguished <u>Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc.</u>, 701 F.Supp. 930 (D.Mass.1988), in which the Court exercised personal jurisdiction over a Florida defendant on grounds that there was a continuing relationship under the sales contract concerning defendant's care of the yacht. In so doing, the Court in <u>New England Welding</u> noted that there was "nothing which reveals a continuing relationship between the parties with regard to this contract such as maintaining or servicing the [equipment]." <u>Id.</u> As a result of the relationship between the parties and the defendant's limited activity in the Commonwealth, the Court concluded that "it would not be in keeping with the law defining due process on this question to allow the maintenance of this action against [the defendant] in this forum." <u>Id.</u>

Similarly, in <u>A-Coinnoisseur</u>, 742 F.Supp. at 43, this Court held that the defendant's contacts with Massachusetts were insufficient for purposes of establishing personal jurisdiction. There, a Pennsylvania defendant sold a van to a Massachusetts plaintiff. The defendant drove the van to Massachusetts before entering into an agreement with the plaintiff; signed the contract for the sale thereof in Massachusetts, and came back to Massachusetts to retrieve the van and drove it back to Pennsylvania for repairs after the contract was signed. Noting that "[t]he mere fact that an entity in Massachusetts executes a contract with an entity in another state does not automatically constitute sufficient contact so as to confer a finding of personal jurisdiction," the Court concluded that the defendant had not conducted any additional purposeful activity in Massachusetts, such that the defendant could be deemed to have "had any expectation of

being haled into a Massachusetts court or any desire to avail itself of the privileges and protections of [Massachusetts] state law." Id.

As in New England Welding and A-Coinnoisseur, Iceland Express's contact with the Commonwealth of Massachusetts in this case is comprised of an isolated Agreement with Sutra, which does not contemplates the performance of any significant continuing activities on the part of either party within Massachusetts. On the contrary, the Agreement contemplates use by Iceland Express of the Airkiosk System outside of Massachusetts, and that Sutra would render functional or technical support services to Iceland Express in Iceland. Although Iceland Express agreed to make ongoing royalty payments to Sutra in Massachusetts, the mere mailing, wiring and/or promise to make payments to Sutra in Massachusetts is simply insufficient to establish constitutionally required minimum contacts. See Automatic Sprinkler, supra, 361 Mass. at 445 (personal jurisdiction denied where defendant's Massachusetts contacts were simply "in the nature of affirming a contract and making payments through the mail"). See also, Stuart v. Spademan, 772 F.2d 1185, 1192, 1194 (5th Cir.1985) (combination of a contractual relationship, defendant's mailing payments to forum state and engaging in communications in forum state regarding execution and performance of a contract do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction); Asset Alloc. & Mgmt. Co. v. Western Empl. Ins. Co., 892 F.2d 566, 569-70 (7th Cir.1989) (payment of checks insufficient for minimum contacts); United Financial Mortg. Corp. v. Bayshores Funding Corp., 245 F.Supp.2d 884, 894 (N.D.Ill. 2002) (sending payments to Illinois alone may not establish minimum contacts); Verde Capital Corp. v. Lausell Aluminum Jalousies, Inc., 729 F.Supp. 92, 93 (S.D.Fla. 1989) ("standing

alone, a promise to make payments in the forum state does not constitute minimum contacts and therefore does not comport with the due process clause"); <u>Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.</u>, 597 F.2d 596, 598-99, 603 (7th Cir.1979), <u>cert. denied</u>, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (defendant did not purposefully avail itself by sending purchase orders, other mail, and making telephone calls during contract negotiations).

Accordingly, for the reasons set forth in <u>New England Welding</u> and <u>A-Coinnoisseur</u>, Iceland Express cannot possibly be deemed to have purposefully availed itself of the privileges and protections of Massachusetts law, such that Iceland Express should reasonably have anticipated being haled into court in Massachusetts, and this Court must dismiss Sutra's Complaint for lack of personal jurisdiction.

## IV. CONCLUSION

WHEREFORE, based upon the foregoing points and authorities the Defendants Iceland Express Corporation and Iceland Express Patents Corporation respectfully request that this Honorable Court grant their Motion to Dismiss for Lack of Personal Jurisdiction.

DEFENDANT ICELAND EXPRESS, EHF

Respectfully submitted,

_____
Richard B. Kirby, BBO #273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin, LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: May 13, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by _mail_ on _5/13/05_

16