```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


SUTRA, INC.,                    )
     Plaintiff,                 )
                                )     CIVIL ACTION NO.
     v.                         )     04-11360-DPW
                                )
ICELAND EXPRESS, EHF,           )
     Defendant.                 )
```

                        MEMORANDUM AND ORDER
                            July 14, 2005

Sutra, Inc. ("Sutra"), a Massachusetts application service provider software company, brought this action against Iceland Express, EHF ("Iceland Express"), an Icelandic airline operator, for breach of contract and misappropriation of Sutra's trade secrets arising out of an agreement for Sutra to license its computerized flight reservation system, Airkiosk, to Iceland Express.  Iceland Express moves to dismiss Sutra's suit for lack of personal jurisdiction.  I will deny the motion.

### I. Background

The parties do not dispute the facts underlying this motion.  In July 2002, Iceland Express contacted Sutra in Massachusetts by telephone to discuss procuring Airkiosk for the operation of its three flight routes, which service Europe exclusively.  The parties negotiated, via telephone, e-mail and facsimile, the details of their December 10, 2002 agreement to grant Iceland Express access to Airkiosk for one year.

The contract -- which provided that it be governed by Massachusetts law -- required Iceland Express to buy and maintain hardware in Iceland to remotely access the Airkiosk system hosted on Sutra's computer servers in Massachusetts.  Sutra would initially load data into the Airkiosk system.  Thereafter, Iceland Express would input and manage the data.

As an essential prerequisite to Iceland Express's use of the system, Sutra required two Iceland Express employees to undergo formal training by Sutra.  To alleviate scheduling constraints on Iceland Express's end, Sutra offered to send staff to Iceland to conduct the mandatory training in lieu of requiring Iceland Express to travel to Massachusetts.  Ultimately, however, Iceland Express sent two staff members to Sutra's headquarters for three to four days of instruction.

Sutra would render any necessary functional and technical support to Iceland Express via e-mail and telephone from Massachusetts.  Pursuant to this agreement, Iceland Express representatives continued to contact Sutra after Airkiosk's implementation for operational support.

In addition, Iceland Express continued to send payments to Sutra in Massachusetts in accordance with the terms of the contract.

On June 26, 2003, approximately six months after the Airkiosk's initialization, Iceland Express executed an external script that accessed portions of Airkiosk on Sutra's server

computers in Massachusetts.  Sutra claims that Iceland Express sought illicit access to Airkiosk's core systems and data in order to obtain and exploit Sutra's trade secrets.

Iceland Express seeks dismissal of Sutra's complaint on personal jurisdiction grounds arguing that it has never advertised in, nor derived revenue from activities in, Massachusetts.  Iceland Express has never owned or occupied real property in Massachusetts.  Moreover, Iceland Express maintains no offices outside of Iceland, and its shareholders are Icelandic nationals.

Sutra argues in opposition that Iceland Express has established sufficient minimum contacts with Massachusetts to subject it to personal jurisdiction.  Sutra cited specifically that Iceland Express initiated contact with Sutra, a Massachusetts company, directed communications to Massachusetts in the course of negotiating the contract and seeking technical support and accessed Sutra's server computers in Massachusetts by way of an external script.

## II. Discussion

**A. Standard of Review**

A plaintiff bringing a diversity suit bears the burden of establishing the forum state's *prima facie* personal jurisdiction over a non-resident defendant.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 975 F.Supp. 30, 37 (D. Mass. 1997).  In assessing

the sufficiency of the plaintiff's evidentiary showing, the Court must presume the truth of properly supported facts presented by the plaintiff.  The Court must view this evidence along with any facts put forward by the defendant, to the extent they are uncontested, in the light most favorable to establishing jurisdiction.  Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp. 2d 102, 108 (D. Mass. 2003).

A federal court must apply state law in the personal jurisdiction analysis as if it were functionally equivalent to a state court sitting in the forum state.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002), cert. denied, 537 U.S. 1029 (2002).

**B. Analysis**

Personal jurisdiction over a non-resident defendant is available only as provided by the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3.  A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F.Supp. 39, 42 (D. Mass. 1990). Moreover, even if the long-arm statute allows personal jurisdiction, the Court may only uphold the state's research where it comports with 14th Amendment due process constraints. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).

**1. Massachusetts Long-Arm Statute**

Under Massachusetts law, a forum court may exercise personal jurisdiction over a person or corporation that, *inter alia*, "transact[s] any business" in Massachusetts.  Mass. Gen. Laws ch. 223A, § 1, 3(a) (2000).[1]  In this connection, the cause of action underlying the parties' dispute must arise from that transaction of business.

Courts have construed the above transacting business provision broadly to reach any purposeful personal, private or commercial act committed by a non-resident defendant.  <u>Foster-Miller, Inc.</u>, 975 F.Supp. at 37; <u>Boudreau v. Scitex Corp. Ltd.</u>, 1992 WL 159667 *2 (D. Mass. 1992).  In fact, a defendant need only reach into Massachusetts once or twice by way of telephone, facsimile, or e-mail to transact business.  <u>Workgroup Tech. Corp.</u>, 246 F.Supp. 2d at 110-11; <u>Boudreau</u>, 1992 WL 159667 *2 (negotiating an employment contract by telephone, e-mail and facsimile with a Massachusetts plaintiff constituted transacting business); <u>Hahn v. Vermont Law School</u>, 698 F.2d 48, 51 (1st Cir. 1983) (mailing of application information and an acceptance letter to Massachusetts satisfied the Commonwealth's transacting business requirement).  However, where two parties have

---

[1] Sutra does not contest Iceland Express's assertion that it neither "contract[ed] to supply services or things" in Massachusetts nor "ha[d] any interest in, using or possessing real property" in Massachusetts as required respectively by §§ 3(b) and 3(e) of Mass. Gen. Laws ch. 223A.  Consequently, analysis here will focus on § 3(a).

contracted for services, communications to the forum state must be instrumental in -- rather than "purely incidental" to -- the formation of the contract to reach the threshold necessary to constitute transacting business. Workgroup Tech. Corp., 246 F.Supp. 2d at 111.

Here, Iceland Express negotiated the parties' contract with Sutra in Massachusetts via telephone, e-mail and facsimile. Iceland Express's communications included initiating contact, expressing interest in Airkiosk, requesting detailed information on the functionality of Airkiosk and scheduling implementation and training. These communications were instrumental in forming the parties' agreement and constitute purposeful acts by Iceland Express to transact business in the Commonwealth. See Boudreau, 1992 WL 159667 *2.

Where the dispute centers on an isolated transaction, such as a single purchase of goods, without additional contractual obligations, a few communications directed by the defendant into the forum state may not necessarily suffice to establish personal jurisdiction. Automatic Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 445 (1972) (holding a defendant's affirmance of a contract and making payments through the mail insufficient to confer personal jurisdiction); Droukas v. Divers Training Academy, 375 Mass. 149, 154 (1978) (holding a defendant's placement of an advertisement in the Commonwealth, correspondence with the plaintiff in Massachusetts regarding the

-6-

purchase and the shipment of the product to Massachusetts insufficient to subject defendant to personal jurisdiction).

Defendant argued at the hearing on this motion that a recent case, Intech v. Triple "C" Marine Salvage, Inc., 444 Mass. 122 (2005), is the harbinger of a new, more austere, approach to the Massachusetts long-arm statute when the dispute arises out of limited contractual relations between the parties. But, on examination, Intech falls within the established Massachusetts line. Intech involved two isolated transactions and "contacts that are essentially indistinguishable from those in the Droukas case." Id. at 127. By contrast to this line of cases involving an isolated transaction (or two) by a non-resident entity, the Airkiosk transaction involved a one-year relationship and sustained performance under the contract, specifically ongoing e-mail and telephone support to be rendered by Sutra from Massachusetts.

Moreover, Iceland Express made especially purposeful contact with the forum state when it sent two employees into Massachusetts for formal training by Sutra staff. Iceland Express contends, relying primarily on Lyle Richards, that these visits to Massachusetts do not rise to the significance of transacting business. But the visits to Massachusetts by the Lyle Richards defendant consisted of attending three trade shows unrelated, or at best "incidental," to the business it conducted with the plaintiff. Here, however, Iceland Express's employee

-7-

travel to Massachusetts was expressly stipulated under the parties' contract and essential to their business dealings.

Defendant advanced the overly formalistic argument at hearing that because Iceland Express's visits were undertaken for training rather than discussion or endorsement of the agreement, they were incidental to the parties' contract. As demonstrated in the record, however, Sutra made clear that the training was required of any Airkiosk licensee. Without assent to the training provision, which the parties contemplated would occur in Massachusetts, the agreement would ultimately have failed. In function, therefore, Iceland's presence in Massachusetts was essential to the contractual undertaking.

Iceland Express's presence in the forum state, taken with its remote communications and ongoing contractual obligations, more than adequately satisfies the long-arm statute's transacting business requirement.

The long-arm's second "arising from" requirement is also satisfied where Sutra's complaint against Iceland Express for breach of contract stems from Iceland Express's agreement to license Sutra's Airkiosk software. Hahn, 698 F.2d at 51 (holding a breach of contract dispute between resident and non-resident satisfies the "arising from" requirement); Tatro v. Manor Care, Inc., 416 Mass. 763, 770 (1994) (holding that "arising from" requirement is fulfilled if plaintiff would not have been injured "but for" defendant's transaction of business in the

Commonwealth).  Thus, Iceland Express is subject to reach pursuant to the long-arm statute of Massachusetts.

**2. Constitutional Due Process**

In addition to establishing that personal jurisdiction is authorized under state law, Sutra must demonstrate that statutory jurisdictional reach over Iceland Express comports with due process.  See A-Connoisseur Transp. Corp., 742 F.Supp. at 42. Due process requires a foreign defendant to have minimum contacts with the forum state such that maintenance of a suit in that jurisdiction does not offend notions of fair play and substantial justice.  Id. at 43.

The Court's measurement of a defendant's minimum contacts in the forum state cannot be "simply mechanical or quantitative," Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945), but, rather, because the criteria to make that determination is highly idiosyncratic, must engage in a case-by-case factual analysis. Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).  To aid in the minimum contacts inquiry, the First Circuit has developed a tripartite analysis.  Workgroup Tech. Corp., 246 F.Supp. 2d at 112.  Under this rubric, the claim underlying Sutra's suit must first arise out of, or relate to, Iceland Express's activities in Massachusetts.  Next, Iceland Express must have purposefully availed itself of the privilege of conducting business in Massachusetts, invoking the benefits and

protections of its laws, such that being haled into state court is foreseeable. Finally, personal jurisdiction over Iceland Express must be reasonable in light of the so-called Gestalt factors. See Id.

    **a. Relatedness**. The relatedness prong of this three-part analysis is a "flexible, relaxed standard," which is satisfied by the transacting business inquiry above where Iceland Express's communications were found to have arisen directly out of, and to have been instrumental in, the formation of the Airkiosk contract. See Pritzker, 42 F.3d at 61.

    **b. Purposeful Availment**. The notion of fairness intrinsic to due process presumes that a non-resident "shielded by the 'benefits and protections'" of Massachusetts state laws in conducting business activities ought to be exposed to the burden of litigation by Massachusetts citizens injured by those activities. Burger King Corp., 471 U.S. at 479. Iceland Express, however, must have availed itself of the privilege of conducting business in Massachusetts to the extent that it could have foreseen suit in the forum state.

    The existence of a contract between the parties, by itself, is not enough to demonstrate purposeful availment. Id. at 479. The Court must scrutinize "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to make a full assessment of

Iceland Express's connection with the forum state.  New England Welding Contractors, Inc., 704 F.Supp. at 317 (quoting Burger King Corp., 471 U.S. at 478-79).

Iceland Express initiated contact with Sutra in Massachusetts and systematically negotiated to obtain a license for Sutra's software application.  In so doing, Iceland Express knowingly reached out of Iceland, making itself vulnerable to another jurisdiction's authority.  See Burger King Corp., 471 U.S. at 479 (granting personal jurisdiction where defendant "deliberately 'reach[ed] out beyond' its home state of Michigan to negotiate with a Florida corporation).

Further, Iceland Express agreed to a choice of law provision that provided its contract would be governed by the laws of Massachusetts.  Assent to regulation by Massachusetts supports the contention that Iceland Express foresaw the possibility of suit here.  Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F.Supp. 2d 172, 176 (D. Mass. 2003) (holding a choice of laws provision probative of whether a defendant deliberately chose to avail itself of the rights and protections afforded by state law in dealing with the plaintiff).

Iceland Express not only deliberately reached into Massachusetts but agreed to contractual provisions requiring ongoing contact with Massachusetts.  An agreement between defendant and plaintiff for maintenance or service indicates a contemplation of activity within the forum beyond an isolated

transaction.  New England Welding Contractors, Inc., 704 F.Supp. at 317.  Such a "continuing relationship" represents purposeful availment of the privilege of conducting business in Massachusetts.  Energy Capital & Services LP v. Hill Refrigeration, Inc., 989 F.Supp. 353, 355 (D. Mass. 1997) (holding that "continuing obligations" and routine communications directed to Massachusetts constitute constitutionally acceptable "minimum contacts").  Iceland Express contracted for ongoing functional and technical support and accessed data on Sutra's server computers in Massachusetts via use of the Airkiosk application.  Although the parties' agreement did not explicitly call for continuing performance of activities within Massachusetts, any presumption that Sutra would have provided telephone and e-mail support from a location outside of its facilities in Massachusetts is wholly unsupported.  Nichols Assocs., Inc. v. Starr, 4 Mass. App. Ct. 91, 96 (1976) (finding contemplation by the parties that plaintiff would perform any portion of agreed work in Massachusetts, rather than in some other state, an indicator of a defendant's purposeful involvement in state commerce).

Furthermore, Iceland Express plainly must have contemplated that ongoing use of Airkiosk's data and systems would require regular access to Sutra's server computers in Massachusetts.  See Lyle Richards Int'l, Ltd., 132 F.3d at 113 (finding a defendant's knowledge of plaintiff's intention to perform responsibilities in

Massachusetts relevant to establishing purposeful availment); Plus Sys., Inc. v. New England Network, Inc., 804 F.Supp. 111 (D. Colo. 1992) (holding that a foreign subscriber's regular communication with an automated teller machine network provider's central computer in Colorado was a factor in finding personal jurisdiction amounting to purposeful availment of Colorado law when considered with visit and payments made to Colorado). Under the terms of the contract, therefore, Iceland Express should have foreseen its continued contacts with the forum state, which lay at the core of the business relationship.

Taken as a whole, Iceland Express's contacts with Massachusetts reflect a purposeful intent to avail itself of the privilege of conducting business here that satisfies "minimum contacts."

**c. The Gestalt Factors**. Where a defendant has been found to have directed activities purposefully at the forum state, to defeat jurisdiction, the defendant must present a compelling case that some other considerations render jurisdiction unreasonable. Burger King Corp., 471 U.S. at 477. In my evaluation of reasonableness, I must weigh "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the

common interests of all sovereigns in promoting substantive policies." Workgroup Tech. Corp., 286 F.Supp. 2d at 114-15; see also Burger King Corp., 471 U.S. at 477.

Iceland Express has presented no evidence to speak of in response to this burden. It has not demonstrated that litigation in the Commonwealth would present circumstances "onerous in a special, unusual, or other constitutionally significant way" beyond the expected inconvenience and cost of appearing in a foreign jurisdiction. Workgroup Tech. Corp., 286 F.Supp. 2d at 115.

As to the state's interest, there is no doubt that Massachusetts has an interest in protecting the intellectual property of its corporate citizens. Foster-Miller, Inc., 975 F.Supp. at 38; McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (noting that the State has a "manifest interest" in providing an effective means of legal redress for its residents). And regarding the plaintiff's interest, Sutra's choice of forum in the instant suit is accorded substantial deference as a measure of its own convenience and interest in obtaining effective relief. See Workgroup Tech. Corp., 286 F.Supp. 2d at 115.

With respect to the fourth and fifth factors, Iceland Express has presented no argument for another jurisdiction having a greater interest in obtaining the most effective resolution of

this dispute nor has it proffered any considerations of social policy which suggest Massachusetts would be an inappropriate forum.

Iceland Express has failed to present any meaningful grounds to defeat personal jurisdiction.

### III. Conclusion

For the reasons set forth more fully above, I find adequate grounds for the Commonwealth to assert personal jurisdiction over Iceland Express. Accordingly, Iceland Express's Motion to Dismiss is DENIED.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE