UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SUTRA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 04-11360-DPW |
| v. | ) | |
| | ) | |
| ICELAND EXPRESS, EHF, | ) | |
| | ) | |
| Defendant. | **)** | |

**SUTRA'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Sutra, Inc. ("Sutra") hereby opposes the motion of Defendant, Iceland Express ehf ("Iceland Express") for summary judgment. Iceland Express has not shown a lack of genuine issues of material facts or that it is entitled to judgment as a matter of law.

BACKGROUND

Sutra is an application service provider (ASP) software company providing an airlines reservation system known as AirKiosk. Airkiosk, is used by airlines to control operations, including making reservations, checking-in passengers at airports, flight control, and revenue collection. In early July 2002, representatives of Iceland Express contacted Sutra regarding possible use of the Airkiosk System for flight operations of a new airline in Iceland. In December 2002, Iceland Express and Sutra entered into an ASP Agreement ("the Agreement") for Iceland Express's use of the AirKiosk System to commence in January 2003.

Problems with the Agreement started right away. In January 2003, Iceland Express sent two persons, Gunnar Karl Nielsson and Byrndis Jonsdottir, to be trained by Sutra. Sutra

1

recommends training for three people for five days, but Iceland Express did not want to follow the recommendations. Once Iceland Express started using the AirKiosk System, they regularly called Sutra for assistance. Although they were one of the smallest customers of Sutra, they had one of the highest service call levels. It appeared to Sutra that many of the problems were caused by incorrect use of the AirKiosk System, either from insufficient training or from a decision by Iceland Express not to use the system properly. Despite regular reminders from Sutra, Iceland Express decided not to use the flight closing procedures.

In June 2003, Sutra discovered an attack on Iceland Express's data. A source external to AirKiosk was rapidly accessing a portion of the data. The accesses were occurring so quickly that the data was not be closed or saved properly. Sutra immediately suspended access to the AirKiosk System and contacted Iceland Express. Iceland Express denied having any part in the attack. However, the AirKiosk System limits access to some parts based upon the Internet address of the machine seeking access. Sutra was able to show that the attack had come from Iceland Express's offices. Confronted with this information, Iceland Express admitted that it had created a script to retrieve certain information. The script had caused damage to a large number of passenger name records. Sutra required a payment of $5000 to correct the errors caused by Iceland Express.

After the incident with the script, Iceland Express indicated that they wanted to change to a new reservation system. They were going to use a substantially untried system. They wanted to used it in tandem with AirKiosk for a period of time, such as six months, to be sure the new system was working. Sutra was not willing to allow such use, which would contravene the Agreement. However, the parties did negotiate an agreement to split ways and for Iceland Express to receive its data. Sutra did remind Iceland Express of its breach of the Agreement and

indicated that the breach was not waived by the release of the data.

Sometime later, Sutra learned that Iceland Express was using the ticket.net system. The ticket.net system was derived from an airline reservation system operated by GoodJet. GoodJet was in bankruptcy in early 2003. Tommy Wiberg, the creator of ticket.net system, was involved the creation of the GoodJet system. As Sutra was informed, GoodJet did not have many administrative functions. However, those were developed very quickly around the time that Iceland Express was using the AirKiosk System. Mr. Wiberg was present on Iceland Express's premises working on ticket.net while Iceland Express was using the AirKiosk System.

## ARGUMENT

A.  <u>Standard for Grant of Summary Judgment</u>

Under the Federal Rules of Civil Procedure, a motion for summary judgment should only be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Id*. In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.*; *Mediacom v. Rates Tech., Inc.*, 4 F. Supp.2d 17, 33 (D.Mass. 1998). Iceland Express has failed to show an absence of genuine issues of material facts which support judgment in its favor.

In support of its motion, Iceland Express presents a confusing discussion of the law and why it believes that summary judgment should be granted. First, Iceland Express asserts that Sutra has not identified its trade secrets with sufficient specificity. However, in its argument,

Iceland Express vacillates between assertions that the trade secrets are not sufficiently described, the access is not sufficiently supported as being improper, and that the trade secrets have not been sufficiently shown in the ticket.net system. It confusingly mixes the facts for all of these asserted deficiencies. Second, Iceland Express suggests that summary judgment is appropriate because Sutra was late in supplying a report of its technical expert, or possibly because the report is deficient and/or does not prove misappropriation. Third, Iceland Express seeks to equate Sutra's breach of contract claim and trade secret claim in order to argue for summary judgment of the former solely on the basis of the prior trade secret arguments. All of Iceland Express's arguments for summary judgment fail because it merely ignores the facts and allegations contrary to its asserted positions. Therefore, Iceland Express's Motion for Summary Judgment should be denied.

B.  Sutra Has Identified Its Trade Secrets With Sufficient Specificity.

Iceland Express argues that summary judgment should be granted because Sutra has failed to properly identify the trade secrets allegedly misappropriated. However, in doing so, Iceland Express relies upon supposed similarities to cases from other jurisdictions and glosses over the most similar case from this jurisdiction. A claim for misappropriation of trade secrets requires under Massachusetts law requires: (1) the existence of a trade secret known and used by Sutra; (2) that Sutra took reasonable steps to preserve the secrecy of the trade secret; and (3) that Iceland Express used improper means, in breach of a confidential relationship, to acquire and use the trade secret. *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F.Supp. 340, 357 (D.Mass.1993) (citing, *inter alia*, *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 260 N.E.2d 723, 729-31 (1970)). With respect to the first element of a claim, a trade secret may consist of "any formula, pattern, device or compilation of information which is used

4

in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it." *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir.1985). To determine what qualifies as a trade secret, the court considers (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *American Science and Engineering, Inc. v. Kelly*, 69 F.Supp.2d 227, 238 (D.Mass.1999); *Moore v. Marty Gilman, Inc.*, 965 F.Supp. 203, 217 (D.Mass.1997) (citing *Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 282 N.E.2d 921, 925 (1972)). Sutra has met these standards.

Interrogatory No. 8 requested identification of trade secrets improperly disclosed by Iceland Express to the creators of ticket.net. Sutra responded that the trade secrets included "the operation, appearance, features and functionality of the Control Agent and Reservation Control interfaces and modules of the AirKiosk system." See Zayotti Aff. Ex. I at page 6. Sutra has further indicated that the identified modules of the AirKiosk System are only disclosed to those who have agreed to maintain confidentiality of the system. Furthermore, IDs, passwords, and Internet address verification are used to control access to these modules. In *Touchpoint Solutions, Inc. v. Eastman Kodak Co.*, 345 F.Supp.2d 23, 28 (D. Mass., 2004), in responding to a similar argument of lack of specificity, the court found that designating the "source code, implementation, overall design and "distributed computing model" of the software was sufficient. In the present case, Sutra is not suggesting such a broad designation. It has limited

the trade secrets to two specific modules of the AirKiosk System. Accordingly, the designation by Sutra is sufficient and the motion for summary judgment should be denied.

In the confusion of Iceland Express's argument, it also suggests that somehow Sutra's description of its trade secrets is insufficient because Iceland Express was entitled to access the data retrieved by the external script and/or Sutra's employees cannot identify which specific trade secrets were incorporated into the ticket.net system. Neither of these allegations, even if true, would support Iceland Express's Motion for Summary Judgment.

Iceland Express was not entitled to access the PNR data with a script. The Agreement governing Iceland Express's use of the AirKiosk System provides that "Iceland Express shall not, and shall prevent its employees to, use, transmit, modify or reproduce for the benefit of third parties any information which is stored in the documentation, programs or databases of AIRKIOSK, if such heretofore mentioned acts are not necessary in the use of the AIRKIOSK as provided by this Agreement." Response to Statement of Facts ¶22. The script was not necessary for use of AirKiosk as provided by the Agreement. Furthermore, the script allowed retrieval of not only data but the formatting of that data as well. Response to Statement of Facts ¶¶18, 19 and 23. Furthermore, Iceland Express gave the information retrieved by the script to Tommy Wiberg, the creator of the ticket.net system, for purposes of trying to migrate information from AirKiosk to the ticket.net system. Response to Statement of Facts ¶25. Iceland Express knew that this was not a necessary use of AirKiosk. When first confronted by Sutra regarding use of the script, Iceland Express denied any knowledge of it. Response to Statement of Facts ¶29. Iceland Express only admitted its actions after Sutra showed that the script had to have run on a computer in Iceland Express's offices. Response to Statement of Facts ¶31.

Despite Iceland Express's suggestions to the contrary, the law does not require Sutra employees to testify as to the use of the trade secrets in the ticket.net system. Proof of misappropriation merely requires that Sutra show Iceland Express breached a confidential relationship in disclosing and/or using the trade secrets. *Data General Corp.,* 825 F.Supp. at 357. As discussed above, Iceland Express admits that it disclosed PNR data obtained from the AirKiosk System to Tommy Wiberg. Response to Statement of Facts ¶25. Furthermore, although Mr. Wiberg asserts that he never had access to the AirKiosk System,[1] he did access the public portions of the AirKiosk system. He worked on ticket.net in the offices of Iceland Express while people in the office were using the confidential portions of the AirKiosk System. Response to Statement of Facts ¶38. Mr. Nielsson and Ms. Jonsdottir, the two Iceland Express employees trained in use of the AirKiosk System also requested specific modules, form and/or reports to be created for the ticket.net system. The only experience either of these individuals had with airline reservations systems was use of the AirKiosk System. Finally, while Sutra's employees have no specific knowledge of the ticket.net system, Sutra has provided an expert report identifying portions of the ticket.net system which appear derived from AirKiosk.

Therefore, Sutra has properly, specifically and fully identified the trade secrets allegedly misappropriated and Iceland Express's Motion for Summary Judgment should be denied.

C.   The Nimerius Expert Report Does Not Provide A Basis For Summary Judgment.

Iceland Express's argument suggests that summary judgment should be granted simply because the Nimerius expert report was late. This is not what the case law says. In determining the motion for summary judgment, the first issue is whether to exclude the expert report. If the

---

[1] The declaration of Tommy Wiberg regarding his access and use of the AirKiosk System is not believable. Mr. Wiberg had also testified in Sweden that he had created the ticket.net system independently of the GoodJet system. The Swedish Criminal Court did not find the testimony believable. Response to Statement of Facts ¶35 and 40. In Mr. Wiberg's Affidavit submitted with Defendant's motion, he again asserts that he created ticket.net after GoodJet despite the Swedish Court's prior finding to the contrary.

7

expert report is excluded, then the summary judgment standard is applied to the remaining evidence. See, e.g., *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-1009 (8th Cir. 1998) (summary judgment standard applied after decision to exclude expert report). In the present case, summary judgment should be denied regardless of whether or not the expert report is admitted. As discussed above, Sutra has produce sufficient evidence to show the existence of trade secrets in the AirKiosk System and the improper use of the AirKiosk System by Iceland Express. The Nimerius expert report merely adds to the evidence of use of the improperly disclosed trade secrets within the ticket.net system. Accordingly, summary judgment should be denied.

     Furthermore, the Nimerius expert report should be admitted, both for purposes of considering summary judgment and at trial. Any delay in providing the expert report was justified in view of the delays caused by Iceland Express. Iceland Express has sough to delay this proceeding ever since it was first filed. Iceland Express did not provide initial disclosures nor any discovery responses until after Sutra had filed a Motion to Compel. Even then, the discovery responses were deficient and Sutra had to file a Second Motion to Compel in order to obtain proper answer and production of documents. Throughout the discovery process, Iceland Express has asserted that it has not documentation relating to operation of the ticket.net system. It had also asserted that it had produced all communications with the creator of the ticket.net system. During the depositions taken in April 2007, Iceland Express failed to produce any representative familiar enough with the ticket.net system to testify as to its content and operation. However, the witnesses did testify that Iceland Express had descriptions of various modules of the ticket.net system which had not been produced. The witnesses further testified that at emails existed which had not been produced. Contrary to a response to a document request, the

witnesses also admitted that Iceland Express had possession of source code for the ticket.net system. Despite the admissions of the witnesses as to the existence of these responsive documents, Iceland Express has refused to produce them. Sutra has filed a Third Motion To Compel, which is currently pending. The information relating to operation of the ticket.net system is important to an analysis of uses of AirKiosk in the ticket.net system. Therefore, Mr. Nimerius was hindered in preparing his report as the direct result of the failure of Iceland Express to properly produce documents.

 Furthermore, Iceland Express was aware of Mr. Nimerius, his anticipated report and the reasons for the delay in the report. Mr. Nimerius had been identified as a person with knowledge of relevant facts in response to Iceland Express's First Set of Interrogatories served May 17, 2006. Zayotti Aff. Ex. I. Sutra further identified Mr. Nimerius as an expert in May, 2007 and indicated that his report would be delayed due to Iceland Express's failure to produce documents. Dorny Decl.. ¶¶9-10. The forthcoming expert report was discussed by counsel several times during the delay. Counsel for Iceland Express never express any objection to the delay. Dorny Decl. ¶10. Therefore, Iceland Express has not been unfairly disadvantaged.

 Finally, the Nimerius expert report is full and complete. It meets the requirements of Rule 26(a)(2). On page 1 of the report, Mr. Nimerius identifies the systems he compared. He further references and includes two appendices describing a history of the Iceland Express System and communications from Tommy Wiberg. Zayotti Aff. Ex. R. Mr. Nimerius then describes the approach he used in making a comparison and the conclusions from the comparison. The report also includes information regarding Mr. Nimerius's qualifications. Accordingly, the report meets the requirements for expert disclosures.

For the foregoing reasons, the expert report of Peter Nimerius should not be excluded and summary judgment should not be granted.

D.        <u>Summary Judgment Is Not Appropriate On the Breach of Contract Claim</u>

Iceland Express erroneously suggests that the breach of contract claim is duplicative of the misappropriation of trade secrets claim. This is not true, although parts of the two claims are related. As part of the Agreement, Iceland Express agreed to maintain the confidentiality of Sutra's trade secrets. Dorny Decl. Ex. C ¶9.2. To the extent that Iceland Express breached this term the claim is the same as for the misappropriation of trade secrets. However, Iceland Express also agreed not to use, transmit modify or reproduce for the benefit of third parties any information stored in the documentation, programs or databases of AirKiosk, unless necessary for use of the AirKiosk System. Iceland Express provided information on the PNR data to Tommy Wiberg. It provides some information on the PNR data to its accounting firm as well. Iceland Express also suggest an accord and satisfaction. However, Sutra specifically held its breach claimswhile ceasing operations with Iceland Express. Therefore, the breach of contact claim should not be denied.

## CONCLUSION

For the foregoing reasons and based on the facts set forth in Sutra's Response to the Statement of Undisputed Facts, Iceland Express's Motion for Summary Judgment should be denied.

                                                Respectfully submitted,

Date: August 31, 2007               _s/  Brett N. Dorny_____
                                                Brett N. Dorny
                                                Law Office of Brett N. Dorny
                                                386 West Main Street, Suite 12A
                                                Northborough, Massachusetts  01532
                                                Tel.  508-709-0501
                                                Fax.  508-519-9185

                                                Attorney for Plaintiff

                                              <u>Certificate of Service</u>

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 31, 2007.

                                               _s/  Brett N. Dorny_____
                                               Brett N. Dorny