**EXHIBIT D**

**GOTHENBURG CITY COURT**
**Department 11**
**Case unit 11:1**

**JUDGMENT**
23 May 2007
Issued in
Gothenburg

**Case no.** B 12172-04

**PARTIES** (number of defendants: 1)

**Prosecutor**
Deputy Chief Prosecutor Bengt Landahl
3rd Prosecutor's Chamber in Gothenburg

**Defendant**
Tommy Wiberg, 650416-5199
Bofinksvägen 2
429 33 Kullavik

Public defender:
Advokat Christian Olsen
Berglund & Co Advokatbyrå
Box 53166
400 15 Gothenburg

———————————————

**JUDGMENT**

| **CRIMES COMMITTED** | **STATUTE** |
|---|---|
| Breach of faith | Ch. 10 § 5 para. 1 and 2 of the Swedish Penal Code |

**SANCTION**
1. Suspended sentence
2. *Per diem* fines: 150, each in the amount of SEK 200

**SPECIAL SANCTION**
The defendant is obligated to pay a fee of SEK 500 under the Act (1994:419)
on the Crime Victims' Foundation

**DECISIONS ON MISCELLANEOUS ISSUES, DAMAGES, ETC.**
Christian Olsen is awarded compensation from public funds of SEK 114,600.
Of this cost, Tommy Wiberg shall repay SEK 30,000 to the government.

| Postal address | Visiting address | Telephone | Telefax | Office hours |
|---|---|---|---|---|
| | Gustav Adolfs Torg 1 | 031-701 1006 | 031-701 1306 | Monday - Friday |
| 404 83 Gothenburg | | E-mail: gbg.tingsratt@dom.se | | 09:00 am – 2:00 pm |

**GOTHENBURG CITY COURT**   **JUDGMENT**  B 12172-04
**Department 11**       23 May 2007
**Case unit 11:1**

**PETITIONS ETC.**

Petitions of the Prosecutor, see Appendix 1.

Tommy Wiberg has denied the charge.

**THE PARTIES' DEVELOPMENT OF THEIR CAUSES OF ACTION.**

**The Prosecutor**

The company Goodjet Aktiebolag (Goodjet) was formed in October 2001.
The company registered the name Goodjet in February 2002.  A person by
the name of Cafer Ok was the initiator of Goodjet.  The business idea behind
Goodjet was to provide air travel on a limited number of routes at very
competitive prices and thus to constitute a low-cost alternative for air
travellers.  Goodjet's base was Gothenburg.  The company leased all the
planes that were used.  The first flights were made on 25 April 2002.  The
offering of travel routes increased in the fall of the same year.  The business
terminated when the company was entered into bankruptcy on 17 January
2003.

In order to maintain low prices, it was required that Goodjet's own costs
were kept down and that the company quickly received payment from its
customers.  It was therefore required that the customers themselves booked
their travels and at the same time paid for their travels.  The company
therefore needed a well-functioning system for ticket booking, which the
customers themselves could use over the internet.  There were booking
systems for low cost airlines on the market, among these a system called Air
Kiosk, but none of these systems were well suited for Goodjet's business.

**GOTHENBURG CITY COURT**      **JUDGMENT**    B 12172-04
**Department 11**               23 May 2007
**Case unit 11:1**

The problem with the booking system was solved by Tommy Wiberg designing a new system for Goodjet's operations. The system proved to be very suitable for the operations that Goodjet conducted. The company had the system valued. The evaluator appointed by the Industry and Trade Chamber of Commerce of West Sweden, Ola Happstadius, valued the booking system at SEK 6,950,000 on 11 June 2002. A pre-condition for the valuation was at a proposed buyer of the system would receive exclusive rights to it.

Tommy Wiberg was hired on 1 April 2002 as IT Manager in Goodjet with a salary of SEK 40,000 per month. He formerly conducted business in the computer industry and knew Cafer Ok. Approximately at the same time as Goodjet was formed, Tommy Wiberg and Cafer Ok had formed the company Greatree AB, the purpose of which according to the Swedish Companies Registry was to trade in pharmaceuticals and natural healing substances and to conduct operations compatible therewith. Tommy Wiberg had already before becoming employed in Goodjet started work on the development of the booking system.

The booking system and all the rights associated therewith belonged to Goodjet. The reason is that according to an agreement dated 4 March 2002, Tommy Wiberg transferred the booking system to Vestia SARL, Luxembourg (Vestia), whereafter Vestia on 5 March 2002 transferred the booking system to Goodjet for a purchase price of SEK 7 million. According to a notice dated 30 May 2002, Cafer Ok did confirm on behalf of Vestia and Goodjet that the transfer of the booking system between Tommy Wiberg and Vestia and the subsequent transfer between Vestia and Goodjet did not constitute any restriction on Tommy Wiberg's right to develop and market similar internet-based booking systems. This document is however not valid. The document was not in Goodjet's possession at the time of the bankruptcy, instead the Bankruptcy Trustee received it only at the beginning

**GOTHENBURG CITY COURT**          **JUDGMENT**        B 12172-04
**Department 11**                             23 May 2007
**Case unit 11:1**

of November 2003 from the attorney of Iceland Express.  Cafer Ok was not authorised to sign on behalf of Vestia.  Vestia's representative Lars Falkeskog has rejected the document as a forgery.

Since Tommy Wiberg developed the booking system during his time as an employee of Goodjet it follows also from the rules of the Swedish Copyright Act that the system accrued to his employer Goodjet.  That Goodjet was the owner of the system is also evident from the bankruptcy statement sworn to by the board members of the company on 4 March 2003 in which the booking system was listed as an asset of Goodjet.

As mentioned, Goodjet was entered into bankruptcy on 17 January 2003.  Attorney Björn Aschan was appointed as Bankruptcy Trustee.  In the Trustee's opinion, the booking system was one of the few assets of the estate that could be sold.  Björn Aschan based his opinion that the booking system belonged to Goodjet and thereby to the Bankruptcy Estate on the chain of transfer accounted for above and on the fact that the system had been developed by Tommy Wiberg during the time he was employed in Goodjet.

In order to sell the booking system, the Bankruptcy Trustee contacted among others SAS, which at that time was looking for a booking system for its newly started low-cost carrier Snowflake.  The Bankruptcy Trustee was also in contact with Tommy Wiberg in his capacity as designer of the system.  Tommy Wiberg confirmed that he had no copyright or financial claims on Goodjet, the estate or in any other capacity as the designer of the booking system.

The ticket booking system had been in operation for a short time with Goodjet.  The system needed to be further refined, developed and adapted to SAS's operations before a sale to that company.  Tommy Wiberg was the person best suited to carry out these improvements.  Björn Aschan therefore

**GOTHENBURG CITY COURT**     **JUDGMENT**    B 12172-04
**Department 11**     23 May 2007
**Case unit 11:1**

took the initiative to an agreement being made between the Bankruptcy Estate and Tommy Wiberg according to which Tommy Wiberg against certain compensation would develop the system further in order to facilitate a sale to SAS. The compensation would comprise of the Bankruptcy Trustee striving towards Tommy Wiberg being hired on a project basis in the company Global Travel Management AB (GTM). (The role of GTM in the course of events will be described below.) In accordance with this agreement, Tommy Wiberg started the work to further develop the system, now called Snowflake.

During the discussions with SAS for a transfer of the booking system it became clear that SAS was unwilling to have a bankruptcy estate as a party to the agreement and supplier. The company GTM therefore became involved in the agreement negotiations. The Bankruptcy Estate, SAS and GTM agreed that any sale of the system to SAS would be carried out with GTM as an intermediary.

On 25 March 2003 there was a meeting between the Bankruptcy Estate and SAS. At the meeting, Tommy Wiberg participated and presented the booking system very well to SAS. At the meeting, Tommy Wiberg confirmed, at the specific request of SAS, that the booking system was entirely owned by Goodjet, that there were no limitations in respect of the ability of the Bankruptcy Estate to sell the booking system to SAS and that he had developed the booking system as an employee of Goodjet. The Bankruptcy Trustee documented the events at the meeting in a memorandum dated 26 March 2003.

After the meeting with SAS, Tommy Wiberg continued the work on adapting the booking system according to a requirement specification from SAS. There was nothing that indicated to the Bankruptcy Trustee that Tommy Wiberg would do anything but contribute to the transfer being completed

6

**GOTHENBURG CITY COURT**          **JUDGMENT**          B 12172-04
**Department 11**                              23 May 2007
**Case unit 11:1**

forthwith.  The negotiations between SAS, GTM and the Estate entered an
increasingly intense stage and the parties planned for a signing in the middle
of May 2003.  The time for the signing meeting was set for 12 May 2003.
Tommy Wiberg was to participate in the meeting but surprisingly did not
show up.  For that reason the transaction could not be executed.

Thereafter, Tommy Wiberg made himself unavailable to the Bankruptcy
Trustee.  On 19 May 2003 the Trustee was forced to apply for execution at
Tommy Wiberg's home, since the Trustee had indications that Tommy
Wiberg himself intended to sell the booking system.  Proceedings were held
at Tommy Wiberg's home the same day.  After the proceedings, Tommy
Wiberg voluntarily released the system to the Bankruptcy Trustee. In the
ensuing quality control it turned out that Tommy Wiberg had erased parts of
the system.

According to an agreement of 26 May 2003, the Bankruptcy Estate
transferred the booking system to GTM.  The originally planned sale to SAS
did not however come to pass.  The agreement entails among other things
that the Bankruptcy Estate will receive royalty on the income GTM (or its
subsidiaries) receives from the booking system.

On 9 October 2003, among others GTM and the airline Iceland Express
participated in a travel show in Malmö.  Iceland Express is a low-cost carrier.
Fredrik Hallberg, representing GTM, contacted Iceland Express'
representative Anders Lidman to inquire whether Iceland Express might be
interested in GTM's booking system.  Anders Lidman stated that Iceland
Express had formerly used the ticket booking system Air Kiosk, but had
become disenchanted with this system.  In the conversation with Fredrik
Hallberg, Anders Lidman stated that Iceland Express had therefore turned to
Tommy Wiberg who in a very short time had developed a new booking
system.  Tommy Wiberg's system had according to Anders Lidman been

7

**GOTHENBURG CITY COURT**     **JUDGMENT**    B 12172-04
**Department 11**     23 May 2007
**Case unit 11:1**

launched in June 2003 by Iceland Express. Fredrik Hallberg was shown Iceland Express' ticket booking system and was at the time able to note that it had great similarities with the system that GTM had acquired from the Bankruptcy Estate of Goodjet. Fredrik Hallberg notified Björn Aschan in his capacity as a Bankruptcy Trustee of the estate of Goodjet that Iceland Express was likely using the system that GTM had acquired the sole rights to.

Björn Aschan asked an IT lawyer with the law firm of Vinge, Linus Johansson, to review the system that the Bankruptcy Estate had sold to GTM and the system that Iceland Express had access to in order to discover whether it was the same system. Linus Johansson's review showed that the two systems were so similar that it could be deemed as certain that Iceland Express' system was based on Goodjet's system. This conclusion was confirmed in an independent review carried out by Henrik Karlsson of the company Pulsen AB, even if this review showed that there were smaller cosmetic differences between the two systems.

Tommy Wiberg was in contact with the then IT Manager Gunnar Nielsson as early as in the first of half of 2003. Tommy Wiberg at that point launched a system called Ticketnet, which is the system that Tommy Wiberg sold to Iceland Express and which in all relevant parts was identical to the system owned by the Bankruptcy Estate. Tommy Wiberg could not have been able to design a new system in the brief time that was available to him.

In conclusion, Tommy Wiberg thus held a fiduciary position in the Bankruptcy Estate and thereby came into possession of the Bankruptcy Estate's ticket booking system. Tommy Wiberg abused his position and caused the Bankruptcy Estate significant or extremely noticeable damage by carrying out actions that led to the booking system being taken away from the Bankruptcy Estate and given to Iceland Express.

**GOTHENBURG CITY COURT**     **JUDGMENT**    B 12172-04
**Department 11**     23 May 2007
**Case unit 11:1**

Björn Aschan and a representative of GTM in February reported Tommy
Wiberg to the prosecutor's office for copyright infringement by reason of
Tommy Wiberg's abovementioned use of the Bankruptcy Estate's booking
system. It is this report on which the prosecution in this case is based.

**Tommy Wiberg**

He developed the computer system that the Bankruptcy Estate has claimed
ownership to in November 2001. He was at that point not employed by
Goodjet. According to law, the copyright of the system was therefore his.
The software was put into operation by Goodjet in February 2002, at that
point under a license from him. He was hired as an IT manager of Goodjet
in April 2002.

The copyright to the system was at all times his and was never transferred to
Vestia or to any other party. In May 2002 however, the representatives of
Goodjet wanted the software to the booking system to be included as an asset
in the bookkeeping. For this reason, a backdated agreement was executed,
according to which he on 4 March 2002 transferred the license rights to the
booking system to Vestia, which in turn transferred the same right to
Goodjet. He demanded that the agreement would clearly state terms under
which he was ensured the rights to market and sell his software himself.
Since the transfer document did not state so, at the same time another
agreement document was drafted with this content, which was signed by
Cafer Ok. After the latter document had been executed, he signed the
agreement regarding the transfer to Vestia and also the receipt for
compensation for the transfer that the public prosecutor has referred to. The
receipt however contains, in addition to the dating, errors or at least
ambiguities to the extent that he was never paid any compensation for the
system and did not transfer anything but a license to the system. He thus has

**GOTHENBURG CITY COURT**      **JUDGMENT**    B 12172-04
**Department 11**                  23 May 2007
**Case unit 11:1**

the rights to dispose over the system even after the above-stated documents were executed.

His employment in Goodjet terminated on 28 January 2003 at the time of the company's bankruptcy.  He never obtained a fiduciary position in the Bankruptcy Estate.  The actions that he took by reason of the operations of the Bankruptcy Estate were made at his own initiative and for his own account.  There was never any consultancy relationship between the Bankruptcy Estate and him and he was accordingly never paid any compensation by the Bankruptcy Estate.  When it became clear to him that he had no use of continued contacts with Bankruptcy Estate, he chose to terminate the contacts.

In May or June 2003 he started to develop an entirely new computer program for ticket booking.  In the autumn of 2003 he licensed this newly developed booking system to Iceland Express and to Fly Me.  He is still active as a consultant with Iceland Express.

In January 2004, a comparative review between the systems of Fly Me and Goodjet was carried out. The review was made by Thomas Jonsson at the company GeniCore and showed that the systems were entirely dissimilar. Thomas Jonsson had unlike Linus Johansson and Henrik Karlsson access to all system code and could therefore review all parts of the system in his assessment.  Thomas Jonsson's result is therefore much more reliable than the results of Linus Johansson's and Henrik Karlsson's reviews.

In conclusion he has the following views on the statements being made in the prosecution.  He has had no such assignment from the Bankruptcy Estate or otherwise any fiduciary position that could lead to liability for criminal breach of faith.  The rights to the software for ticket booking that he developed in the year 2001 were not transferred to Goodjet; instead the rights

**GOTHENBURG CITY COURT**    **JUDGMENT**    B 12172-04
**Department 11**    23 May 2007
**Case unit 11:1**

were at all times his.  At any rate no more than a license right to the software was transferred.  After his employment in Goodjet ceased, he developed a new program for ticket booking which was entirely different than the system referred to in the prosecution.  A license right to this new system was transferred in autumn of 2003 to Iceland Express.

**REASONS**

**Some starting points for the assessment**

The prosecutor has referred to the evidence set forth in Appendix 1.  Tommy Wiberg has in addition to his own information invoked the testimony of Anders Lidman, Lars Hellwig and Thomas Jonsson.  He has also referred to certain written evidence.

The crime breach of faith can be divided into three preconditions.  The perpetrator shall on the basis of a fiduciary position have been assigned to handle a certain matter for somebody else (1), he shall breach this fiduciary position (2) to the detriment of his principal (3).

The City Court will first consider whether Tommy Wiberg has held such a fiduciary position that is a precondition for the crime.

**Fiduciary Position**

Tommy Wiberg was employed as IT Manager of Goodjet until 17 January 2003 when the company entered into bankruptcy.  Through the bankruptcy, Tommy Wiberg's responsibilities towards the company ended.

It is evident from the information from Björn Aschan that Tommy Wiberg after the Bankruptcy Estate came to hold a fiduciary position with the

**GOTHENBURG CITY COURT**    **JUDGMENT**    B 12172-04
**Department 11**    23 May 2007
**Case unit 11:1**

Bankruptcy Estate due to an agreement with the Bankruptcy Trustee. Björn Aschan has confirmed what the prosecutor has referred to in this regard, including that Tommy Wiberg according to the mentioned agreement worked on adapting the booking system for a sale to SAS and that Tommy Wiberg participated in a presentation of the system to the personnel of SAS. The fiduciary position must in any case have entailed a prohibition for Tommy Wiberg to take any action to relieve the Bankruptcy Estates of the assets that he through his fiduciary position had obtained possession of, but which the Bankruptcy Estate owned. Tommy Wiberg must evidently have understood this.

**Breach of faith**

*The ownership of the booking system*

As to the issue of whether Tommy Wiberg intentionally abused his fiduciary position, the City Court must first determine whether the Bankruptcy Estate owned the booking system referred to in the prosecution or if Tommy Wiberg had a right to market and sell the same.

In the prosecution, it is alleged that the system was owned by Goodjet pursuant to a transfer and therefore constituted an asset in the Bankruptcy Estate. Tommy Wiberg has disputed this and claimed that there was never any agreement that meant that he waived the right to market and sell the system himself.

For the reasons set forth below, the City Court is of the opinion that the allegations in the prosecution in this regard are supported by the documents regarding the transfer of the system, by Lars Falkeskog's information about the background to the execution of the transfer documents, by Björn Aschan's information about Tommy Wiberg's actions, by the bankruptcy

**GOTHENBURG CITY COURT**      **JUDGMENT**    B 12172-04
**Department 11**              23 May 2007
**Case unit 11:1**

statement and by the valuation of the booking system. The above-mentioned documentation shows according to the City Court that Tommy Wiberg did not have a right to market or sell the system himself and that he understood this.

Initially, it can thus be noted that the transfer document dated 4 March 2002 states that Tommy Wiberg on that day transferred the ownership to the relevant booking system to Vestia, which on the following day transferred the system to Goodjet for SEK 7,000,000. According to the receipt dated 4 March 2002, Tommy Wiberg also confirmed receipt of full and final compensation for the ownership right to the booking system. Lars Falkeskog has testified that the transfer documentation of 4 and 5 March were drafted by reason of Vestia investing SEK 5 million in Goodjet against compensation in the form of shares in Goodjet. The transfer of the booking system from Tommy Wiberg to Vestia and from Vestia to Goodjet was according to Lars Falkeskog made in order for Vestia to be able to transfer to Goodjet an asset with such a value that would balance in Goodjet's bookkeeping the share issuance from Goodjet to Vestia. Lars Falkeskog has also stated that Goodjet according to the transaction would have the ownership of the system and that the purchase price was paid and share transfer made on the basis of Ola Happstadius' valuation of the system. Furthermore, Lars Falkeskog has stated that Cafer Ok drafted the transfer documentation and that he himself did not meet Tommy Wiberg in connection with the discussions about the transfer of the system.

The wording of the transfer documentation, in combination with Ola Happstadius' valuation of the system and Lars Falkeskog's information regarding the business reasons for the transfer, strongly indicate that the system was transferred with exclusivity to Goodjet. If the exclusive rights to the system had not formed a part of the transfer, Ola Happstadius' valuation would have been significantly lower, which would have meant that the

13

**GOTHENBURG CITY COURT**  **JUDGMENT**  B 12172-04
**Department 11**  23 May 2007
**Case unit 11:1**

system could not be used as a balance item for the share transfer from
Goodjet to Vestia.  The document dated 30 May 2002 is signed by Cafer Ok
who had no right to sign on behalf of Vestia.  The document was not
presented to Lars Falkeskog.  The document, which would have been in
violation of the transactional structure that Lars Falkeskog had described,
cannot be given any evidentiary value.  The witness, corporate counsel Lars
Hellwig has stated that he drafted the documents on behalf of Cafer Ok and
that Tommy Wiberg in connection with the drafting of the documents had
stated that he wanted to retain the rights to his system.  Lars Hellwig has
however, also stated that he was not informed about the transaction structure
behind the documentation and therefore his information does not give any
significant support to the claims of Tommy Wiberg in this respect.

It should further be mentioned that Björn Aschan has confirmed the
prosecutor's statements that Tommy Wiberg in different connections, *inter
alia* in a meeting with SAS, said that he himself not have any copyright or
financial claims on Goodjet, the Bankruptcy Estate or in any other respect as
the creator of the booking system.  The information by the Bankruptcy
Trustee is supported, among other things, by a memorandum of notes drafted
the day after the meeting with SAS.  There's no reason to question the
reliability of the information of the Bankruptcy Trustee.  It has not been
shown that, in the rather extensive contacts that the Trustee had with Tommy
Wiberg, Tommy Wiberg stated or even implied that he had any form of right
to the booking system even though that he must evidently have realised that
Björn Aschan was of the opinion that the system belong to Goodjet's
Bankruptcy Estate are with exclusivity.

It should finally be stated that the relevant booking system is included as an
asset of the Bankruptcy Estate in the bankruptcy statement.  There are no
notations in the statement that Goodjet's right to the system in any way is
limited.  The bankruptcy statement has been sworn to by Cafer Ok in his

14

**GOTHENBURG CITY COURT**      **JUDGMENT**    B 12172-04
**Department 11**                      23 May 2007
**Case unit 11:1**

capacity as representative of Goodjet and by five former board members of the company.

*Did Tommy Wiberg relieve the Bankruptcy Estate of its booking system?*

The investigation thus shows that the relevant booking system was transferred with exclusivity to Goodjet, with the result that Tommy Wiberg no longer had the right to dispose over it and that Tommy Wiberg understood this. The question then arises whether the system that Tommy Wiberg incontrovertibly transferred or licensed to Iceland Express is the same booking system referred to in the prosecution. If it is the same system, then Tommy Wiberg's disposal of the system constitutes an unpermitted appropriation and therefore a breach of faith in relation to the Bankruptcy Estate.

Tommy Wiberg has stated that the system that he transferred to Iceland Express was an entirely different system than the one that the Bankruptcy Estate and, before that, Goodjet had. Furthermore, he had stated that he sold this new system to Iceland Express in August 2003. He has furthermore stated that he designed the system shortly before that, during a period of a week or so. He has referred to PowerPoint slides and other written materials to show that it is two different systems.

The issue of whether Goodjet's system and Iceland Express' system are variations of the same system must be determined on the basis of primarily Linus Johansson's, Henrik Karlsson's and Thomas Jonsson's information and statements. Also Fredrik Hallberg's testimony is of significance in this respect.

Fredrik Hallberg has confirmed the circumstances referred to by the prosecutor about his observations at the tradeshow in October 2003. Fredrik

**GOTHENBURG CITY COURT**    **JUDGMENT**    B 12172-04
**Department 11**    23 May 2007
**Case unit 11:1**

Hallberg's testimony is supported by a memorandum that he drafted in connection with his observations at the tradeshow. Fredrik Hallberg's information shows that Iceland Express in October 2003 had access to a system that was similar to the Goodjet system, containing the functions for payment and cancellation protection etc. that characterise Goodjet's system. Linus Johansson works with IT systems at the law firm of Vinge. He has stated that he, on the day after the notification from Fredrik Hallberg to Björn Aschan, compared the relevant systems and that the systems in his opinion were so similar that they constituted the same system. Henrik Karlsson is a system developer and reviewed the system shortly thereafter at the request of the Vinge law firm. In a statement which Henrik Karlsson has confirmed at the main hearing, it is in summary stated that it is very likely that Goodjet's system and Iceland Express' system are based on the same source, however, there are slight differences of a cosmetic nature.

Against the testimony of Fredrik Hallberg, Lioness Johansson, Henrik Karlsson, there is the testimony of Thomas Jonsson. He is an engineer and works with software development. Thomas Jonsson has compared Goodjet's and Fly Me's booking systems. According to Tommy Wiberg, the systems of Iceland Express and Fly Me are identical. Thomas Jonsson's results are accounted for in a statement of 24 February 2004. The conclusions in the statement, which have been confirmed by Thomas Jonsson at the main hearing, are that both systems have been developed independently and that none of the systems is based on the other.

The City Court is of the opinion that the testimonies of Fredrik Hallberg, Linus Johansson and Henrik Karlsson together show that the system transferred by Tommy Wiberg to Iceland Express is the same system to which the Bankruptcy Estate enjoyed exclusivity. Thomas Jonsson's testimony does contradict that conclusion. However, Thomas Jonsson's review was not made of the Iceland Express system and was made

**GOTHENBURG CITY COURT**     **JUDGMENT**     B 12172-04
**Department 11**     23 May 2007
**Case unit 11:1**

significantly later and at a time when Tommy Wiberg had become aware that the Bankruptcy Estate's stated that Iceland Express had possession of the system of the Bankruptcy Estate.  Tommy Wiberg therefore had the ability to make significant changes in Fly Me's system before Thomas Jonsson's review.

The investigation also shows that Tommy Wiberg as early as in the first half of 2003 presented a booking system to Iceland Express, which reinforces the above-stated assumption that the Iceland Express system is identical to the Bankruptcy Estate's system.  Anders Lidman has thus stated that he brought Tommy Wiberg and Iceland Express together in March 2003, while Fredrik Hallberg has stated that Anders Lidman said at the tradeshow in October 2003 that Iceland Express had access to the system since June 2003.  Gunnar Nielsson, who since the year 2003 has worked with IT and sales at Iceland Express, has stated that he during the spring or summer of 2003 discussed with Tommy Wiberg a transfer of the system from Tommy Wiberg to Iceland Express and that Tommy Wiberg during the period before the transfer presented the system to Iceland Express.

The investigation thus shows that Tommy Wiberg during the spring of 2003 breached his faith in relation to the Bankruptcy Estate by taking actions in relation to the Bankruptcy Estate's booking system which led to the Bankruptcy Estate losing the system and that Iceland Express coming into possession thereof.

**Damage**

It remains to be considered whether Tommy Wiberg's breach of faith has caused damage to the Bankruptcy Estate and if so whether the damage has been significant or extremely noticeable to the Bankruptcy Estate.

**GOTHENBURG CITY COURT**         **JUDGMENT**      B 12172-04
**Department 11**                           23 May 2007
**Case unit 11:1**

It can be noted that the booking system in June 2002 was valued at almost
SEK 7 million and that the Bankruptcy Trustee has stated that the system
was or less the only saleable asset of the Estate.  Against this background and
considering what Björn Aschan has stated about the compensation to the
Bankruptcy Estate for the booking system that was discussed in the
negotiations for the sale of the system, the City Court is of the opinion that
Tommy Wiberg's actions in the spring of 2003 constituted a significant risk
for a final loss by the Bankruptcy Estate.  That there was such a risk means
that damage for the Estate arose at the time of these actions.

Even if it is difficult to determine in detail the amount of the damage
suffered by the Bankruptcy Estate, the damage must against the above
background be deemed to have been significant.  In the bankruptcy
statement, the value of the booking system is stated at SEK 0 but valuations
of assets of bankruptcy estates are usually very conservative.

There can be no doubt that Tommy Wiberg understood that his actions
constituted significant damage to the Bankruptcy Estate.

Against the above background, the prosecution has proven its case.  Tommy
Wiberg shall thus be convicted of aggravated breach of faith.

**Sentence**

Tommy Wiberg does not have a criminal record.  The personal investigation
shows that he has a well-ordered existence and there is no need for
supervision.

The City Court is of the opinion that Tommy Wiberg's crime has a penal
merit of less than one year's imprisonment.  On this basis and considering
that Tommy Wiberg has no criminal record and that the nature of the crime

18

**GOTHENBURG CITY COURT**      **JUDGMENT**    B 12172-04
**Department 11**                     23 May 2007
**Case unit 11:1**

does not support imprisonment, the sanction should be suspended sentence and a fine.

Against the above background of his culpability, Tommy Wiberg should be responsible for a part of the trial costs.  He shall also under law pay a fee to the Crime Victim's Foundation.

**HOW TO APPEAL,** see appendix 2 (Dv 400)
The appeal shall be addressed to the Court of Appeals for Western Sweden and be submitted to the City Court no later than 13 June 2007.

/Signed by /

Roy Johansson.

Regional Public Prosecution Office
3rd Local Public Prosecution Office

**REQUEST FOR A SUMMONS**  Page 1(2)

Deputy Chief District Prosecutor

| Date | File no. |
|---|---|
| 30 May 2006 | C3-16-824-04 |
| | Org. Code: 403 |

Göteborg City Court
Dept. 7
404 83 GOTHENBURG

City Court case B12172-04
Case handler: C

| Defendant | | First name | [Illegible] |
|---|---|---|---|
| **Wiberg, Jan Tommy** | | Tommy | |
| Civic registration number | Citizen (if other than Sweden) | Telephone | Need for interpreter |
| 650416-5199 | SWEDEN | | |
| Address | | | |
| Bofinksvägen 2, 429 33 KULLAVIK | | | |
| Public defender/Counsel | | | |
| Christian Olsen, Box 53166, SE-400 15 GOTHENBURG | | | |
| Incarceration | | | |
| Has not been incarcerated | | | |
| Service of process information | | | |

**Petitions etc.**

**AGGRAVATE BREACH OF FAITH, K 30232-04**

**Plaintiff**

1.  Goodjet AB in bankruptcy (informed about the prosecution)
    Representative: Bankruptcy Trustee Björn Aschan
2.  Qust Reservations AB, owner of rights (informed about the prosecution)
    Representative: Attorney Mats Hansson

**Criminal conduct**

Tommy Wiberg was from 1 April 2002 employed as IT manager of Goodjet AB (the "Company") until the Company was entered into bankruptcy on 17 January 2003. At the request of representatives of the Company, Wiberg did, starting sometime during 2001, produce a computer-based ticket booking system, which after Wiberg was hired by the Company was transferred to the company. Wiberg did during the time he held the above-mentioned  position and also thereafter in 2003, when he on behalf of the bankruptcy estate continued to develop the system, abuse his fiduciary position by taking actions leading to the loss by the Company of the booking system. Through these actions, Wiberg did cause significant or extremely noticeable damage.

**Statutory provision**

Ch. 10 § 5 para. 1 and 2 of the Swedish Penal Code.

Evidence:

Oral:

1.  Testimony of the bankruptcy Trustee Björn Aschan. Aschan will be heard generally about his observations regarding the financial and legal circumstances of Goodjet AB, as well as about the information provided by Tommy Wiberg regarding his employment in the Company, about the creation of the booking system, about the title to the system and about the different actions that he and Wiberg took jointly and individually with the aim to

**GOTHENBURG CITY COURT**          **JUDGMENT**          B 12172-04
**Department 11**                             23 May 2007
**Case unit 11:1**

sell the booking system on as favourable terms for the Bankruptcy Estate as possible.
This testimony is intended to prove that the booking system was the property of the
Company and that Wiberg, after the booking system became the property of the
Company, did not have any right of disposal over it without the approval of the Company
or the Bankruptcy Trustee, and that there was no such approval, as well as that the
actions taken by Wiberg as set forth in the prosecution have caused the Company and
the Bankruptcy Estate significant or extremely noticeable damage.

2.   Testimony of Lars Falkeskog, board member of Goodjet AB, regarding his knowledge
about how and when the booking system became the property of the Company and
regarding the valuation thereof, to prove that the booking system was the property of the
Company and that Wiberg had no right to transfer it.

3.   Testimony of Fredrik Hallberg regarding a meeting with representatives of the airline
Iceland Express on 9 October 2003, and the information provided by him that the airline
had acquired its new booking system from Tommy Wiberg. The testimony is intended to
prove that Wiberg abused his fiduciary position by unlawfully transferring the booking
system, which damaged Goodjet or the Bankruptcy Estate.

4.   Testimony of Linus Johansson regarding his observations in the examination of the
booking system in the spring of 2003 as well as in the autumn of 2003. The testimony is
intended to prove that the system acquired and used by Iceland Express had such
similarities to the system developed by Wiberg for Goodjet that it can be considered
certain that the system is derived from Goodjet's booking system.

5.   Testimony of Henrik Karlsson regarding his examination of the booking system in the
autumn of 2003, and the conclusions that can be drawn thereby, to prove that the system
acquired by Iceland Express had such similarities to Goodjet's system that it can be
considered certain that the system is derived from Goodjet's booking system.

6.   Testimony of Gunnar Carl Nielsson (Icelandic interpreter needed), IT manager of Iceland
Express, regarding his contacts with Wiberg by reason of Icelandic Express' purchase of
a booking system from Wiberg, which considering the time of the purchase and the
technical design is to be considered identical to Goodjet's system, all to prove that
Wiberg has acted in the manner alleged in the prosecution.

Written

Document drafted within SAS by reason of Tommy Wiberg's statement that the booking
system was owned by Goodjet (minutes from the investigation p. 11).

Memorandum by Fredrik Hallberg, regarding his above-mentioned meeting with
representatives of Icelandic Express (minutes from the investigation p. 23).

Certificate of employment and salary statement regarding Tommy Wiberg, issued by Goodjet
AB (minutes from the investigation p. 111 and 113).

/signed/
Bengt Landahl

| | | |
|---|---|---|
| **GOTHENBURG CITY COURT** | NOTES | File appendix 42 |
| **Department 11** | 7 May 2007 | Case no. |
| | 9 May 2007 | B 12172-04 |
| | From main hearing | |
| | in Gothenburg | |
| | Time: | |
| | 7 May 2007 9.00 am – 3.30 pm | |
| | 8 May 2007 9.00 am – 4.00 pm | |
| | 9 May 2007 9.00 am – 1.45 pm | |

**THE COURT**
Judge Roy Johansson and Lay Judges
Lars Lindberg, Georg Sandbakken and Laila Lundmark

**KEEPER OF THE MINUTES**
Court Secretary Anki Petterson

**PARTIES** and defender/attorney/counsel
See Judgment (unless otherwise stated)

**OTHERS** (present unless otherwise stated)

Detective Anders Rudolf, present all days

**Plaintiff (to be heard), present on 7 May 2007**
Bankruptcy Trustee Björn Aschan

**Witnesses present on 8 May 2007**
Lars Falkeskog
Fredrik Hallberg
Linus Johansson
Henrik Karlsson
Gunnar Nielsson, present by telephone

**Witnesses present on 9 May 2007**
Anders Lidman
Lars Hellwig
Tomas Jonsson

**Sworn interpreter, present on 8 May 2007**
Birna Augustdottir

_____

**PETITIONS ETC.**
See Judgment.

**EVIDENCE**
Invoked by the prosecutor, see the request for a summons, file appendix 6.

**GOTHENBURG CITY COURT**    **NOTES**    Page  2
**Department 11**    07 May 2007    B 12172-04
    -- 9 May 2007

**Testimony recorded digitally:**
Plaintiff Björn Aschan
Defendant Tommy Wiberg
Witnesses Lars Falkeskog, Fredrik Hallberg, Linus Johansson
Henrik Karlsson, Gunnar Nielsson, Lars Hellwig, Anders Lidman and
Tomas Jonsson. All witnesses are sworn.

**The following persons have petitioned the court for compensation for their appearance:**
Fredrik Hallberg and Henrik Karlsson

**The following persons have not petitioned the court for compensation for their appearance:**
Björn Aschan, Lars-Göran Falkeskog, Linus Johansson, Lars Hellwig, Anders Lidman and
Tomas Jonsson.

**Personal investigation performed**
Personal information and per diem fine information, file appendix 10
Criminal record excerpt, file appendix 11
Statement from the parole board, file appendix 15

Tommy Wiberg states that he consents to carrying out public service.

**CLAIM FOR DAMAGES**
The prosecutor states Qust Reservations Aktiebolag's petition for damages in accordance with file
appendix 39.

Christian Olsen states the following. Tommy Wiberg disputes the petition for damages by reference to
his position on the prosecution. No amount can be confirmed as reasonable *per se*. Since there is no
documentation enabling any assessment of the claimed amounts, it is requested that the claim for
damages be separated in order to be handled in a civil case.

The prosecutor is of the opinion that there is no need to separate the claim for damages. The manner in
which the costs have been calculated has been sufficiently documented. In addition, more materials
may be requested and be available for the City Court the following day.

After a brief *ex parte* conference among the judges, the Court, in the presence of the parties, makes the
following

**DECISION** (issued on 8 May 2007)

The plaintiff, Qust Reservations Aktiebolag, has shortly before the main hearing claimed damages of
SEK 4,188,000. At the hearing, Tommy Wiberg has disputed the claim. He has stated that there is
neither any documentation regarding calculation of the claimed amounts, nor any documentary
evidence of the plaintiff's alleged costs. Tommy Wiberg has said that he therefore cannot have an
opinion on whether the claimed damages are reasonable to any extent. The plaintiff should be offered
the opportunity to refute Tommy Wiberg's objections. The prosecutor has stated that he on the
following hearing day is able to submit additional materials supporting the claim. If additional
materials are submitted, Tommy Wiberg must however be given the opportunity to review and refute
these, which cannot be effectuated within the framework of the main hearing. For this reason and
considering that the amount of the claimed damages, it will entail significant disadvantages to handle
the prosecution and the claim for damages jointly. The plaintiff's individual claim should therefore be
separated and going forward be handled separately.

**GOTHENBURG CITY COURT**       **NOTES**        Page  3
**Department 11**               07 May 2007      B 12172-04
                                -- 9 May 2007

The claim for damages by Qust Reservations Aktiebolag is separated to be handled in a civil case.

The decision may not be appealed.
_____

**MISCELLANEOUS NOTES**

1. Christian Olsen submits documentation for the presentation of Tommy Wiberg's defense, <u>file appendix 43</u>.
2. Tommy Wiberg submits documentation for the Power Point presentation, <u>file appendix 44</u>.
3. The interpreter requests and is awarded compensation from public funds in the amount of SEK 584, of which SEK 443 is work and SEK 141 wasted time. The decision may be appealed separately.
4. Christian Olsen submits his fee statement, <u>file appendix 47</u>.
5. The parties are informed that the judgment will be issued by being made available at the office of the Court, department 11:1, on Wednesday 23 May 2007 at 2.00 pm.
6. The Court will continue its *ex parte* proceedings on Friday 11 May 2007 at 1.00 pm.

/signed/
Anki Pettersson