UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11360-DPW

|  |  |
|---|---|
| SUTRA, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| ICELAND EXPRESS, EHF, | ) |
| Defendant. | ) |

**DEFENDANT ICELAND EXPRESS, EHF'S
SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
– LEAVE TO FILE GRANTED ON SEPTEMBER 28, 2007**

The Defendant Iceland Express, ehf hereby submits the following Supplemental Memorandum of Law in Support of its Motion for Summary Judgment.

A. **SUTRA'S VAGUE AND CONCLUSORY ASSERTION THAT THE "STRUCTURE AND RELATIONSHIP" OF THE PNR DATA CONSTITUTES A TRADE SECRET IS INSUFFICIENT TO AVOID SUMMARY JUDGMENT**

On September 26, 2007, during the hearing on Defendant's Motion for Summary Judgment, Sutra's counsel argued that the Defendant's motion should be denied because there is a genuine triable issue on the sole question whether the "structure and relationship" of the PNR data constitutes a trade secret. When pressed by the Court to explain how the "structure and relationship" of such generic flight reservation data could possibly constitute a trade secret, Sutra's counsel was unable to point to any competent evidence in the summary judgment record to support this vague and conclusory assertion. Indeed, Sutra's vague and conclusory assertions concerning the "structure and

relationship" of the PNR data, without more, are insufficient to raise a genuine triable issue of fact to prevent entry of summary judgment in favor of Iceland Express on Sutra's claim for misappropriation of trade secrets.

It is well settled that in order to avoid summary judgment, the nonmoving party "must offer the court more than posturing and conclusory rhetoric. This principle is brought into bold relief when the motion targets an issue on which the nonmoving party bears the ultimate burden of proof." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Further, it is also well established that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000), citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Consequently, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Torres, 219 F.3d at 18, citing, Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir.1994).

Sutra has not come forward and cannot come forward with any competent facts in the summary judgment record, let alone a scintilla of evidence concerning the "structure and relationship" of the PNR data to show: "1) the extent to which the information is known outside of the business; . . . 4) the value of the information to the employer and to his competitors; 5) the amount of effort or money expended by the employer in developing the information; and 6) the ease or difficulty with which the information could be properly acquired or duplicated by others." TouchPoint Solutions, Inc. v. Eastman Kodak Co., 345 F.Supp.2d 23, 27-28 (D.Mass. 2004), citing, American Science and Engineering, Inc. v. Kelly, 69 F.Supp.2d 227, 238 (D.Mass. 1999) (quoting

RESTATEMENT (SECOND) OF TORTS § 727). Moreover, contrary to Sutra's argument during the hearing regarding the value of this supposed trade secret, Sutra failed to disclose any expert opinion regarding the purported value of the AirKiosk System overall, or more specifically for purposes of summary judgment, the value of the "structure and relationship" of the PNR data thereof. Instead, Sutra's expert report regarding alleged damages is premised solely on the alleged loss of license revenues and/or profits. Zayotti Affidavit dated September 27, 2007, Exh. A. Finally, Sutra acknowledged that "most airlines track fare data with great vigor" and admitted that it is unable to say to what extent other airline reservation systems on the market may have features similar to the AirKiosk System. Zayotti Affidavit dated August 17, 2007, Exh. A, at 84, 155 (S.Niketic).

Accordingly, Iceland Express is entitled to summary judgment as a matter of law because Sutra has failed to raise a genuine triable issue as to its conclusory assertion that the "structure and relationship" of the PNR data constitutes a trade secret.

**B.    EVEN IF THE COURT WERE TO CONCLUDE THAT THERE IS A GENUINE TRIABLE ISSUE AS TO WHETHER THE "STRUCTURE AND RELATIONSHIP" OF THE PNR DATA CONSTITUTES A TRADE SECRET, DEFENDANT IS STILL ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NOT A SHRED OF COMPETENT EVIDENCE TO SUPPORT SUTRA'S VAGUE AND CONCLUSORY ASSERTION THAT THE SUPPOSED TRADE SECRET WAS IMPROPERLY USED BY TOMMY WIBERG TO DEVELOP SOME UNSPECIFIED AND PREVIOUSLY NON-EXISTENT FEATURE OR FUNCTION OF THE TICKET.NET SYSTEM**

Even if the Court were to conclude that there is a genuine triable issue as to whether the "structure and relationship" of the PNR data constitutes a trade secret, Iceland Express is still entitled to summary judgment because there is not even a shred of competent evidence to support Sutra's vague and conclusory assertion that this supposed

trade secret was improperly used by Tommy Wiberg to develop some unspecified and previously non-existent feature or function of the Ticket.net System. In that regard, Sutra admitted that it is unable to identify what aspects of the operation, appearance, features and functionality of the AirKiosk System were allegedly misappropriated by Iceland Express and incorporated into Ticket.net. Zayotti Affidavit dated August 17, 2007, Exh. F, at 40 (N. Niketic). Sutra further admitted that it is "almost impossible" for Sutra to identify what features of the AirKiosk System Sutra is claiming were misappropriated by Iceland Express. Id., Exh. A, at 153-154 (S.Niketic). Sutra also admitted that it is not familiar with the features, functionality, operation or appearance of the Goodjet System, the Qust System or the Ticket.net System. Id., Exh. F, at 36-37 (N. Niketic). Sutra further admitted that its allegation that its trade secrets were incorporated into the Ticket.net system are based entirely on the hearsay statements of a Swedish company known as Aton and an individual named Peter Nimerius. Id., Exh. A, at 186-187, 221-222 (S. Niketic). It is simply not enough for Sutra to point to some vague area of technology and "assert that something there must have been secret and misappropriated". AutoMed Technologies, Inc. v. Eller, 160 F.Supp.2d 915, 920 (N.D.Ill. 2001), citing, Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992).

      Additionally, there is no competent evidence in the record to show that the Ticket.net System, and/or any predecessor system, lacked certain administrative features or functionality prior to Iceland Express's use of the AirKiosk System, and/or that the Ticket.net System thereafter included any such features or functions similar to the AirKiosk System or, for that matter, what those similarities might be.

Finally, regardless of whether the process of opening the PNRs by means of the script could have revealed the "structure and relationship" of the data to Iceland Express employee Gunnar Karl Nielsson as Sutra contends, Sutra has failed to controvert Mr. Nielsson's sworn testimony that the script copied "just the information of each PNR into a text file, and then closed the PNR down again, then opened up another PNR copied it to a text file, saved it, closed the PNR down, and so on, and so on" and that these "common test files [had] nothing in them but the names of the passengers, a certain set-up that is a common language for airlines. So there is nothing dangerous in them. There were no codes no programming, nothing." Zayotti Affidavit, Exh. B, at 24, 26 (G.Nielsson). Accordingly, Sutra cannot establish that the supposed trade secret consisting of the "structure and relationship" of the PNR data was used improperly by Tommy Wiberg to develop some portion of the Ticket.net System. See Data General Corp. v. Grumman Systems Support Corp., 825 F.Supp. 340, 357 (D.Mass. 1993) (to prevail on claim for misappropriated of trade secrets plaintiff required to show, among other things, that defendant "used improper means, in breach of a confidential relationship, to acquire and use the trade secret").

By the same token, Sutra cannot establish that the alleged trade secret consisting of the "structure and relationship" of the PNR data was used improperly in order to develop the Ticket.net System or in breach of section 9.3 of the parties' Agreement as Sutra argued during the hearing for the additional reason that when Sutra voluntarily migrated the PNR data to Iceland Express Sutra expressly agreed that Iceland Express "could put it into their new system. . . ." Zayotti Affidavit, dated August 17, 2007, Exh. A, at 147.

WHEREFORE, based on the foregoing supplemental points and authorities the Defendant Iceland Express, ehf respectfully requests that this Honorable Court grant the Defendant's Motion for Summary Judgment.

DEFENDANT ICELAND EXPRESS, EHF

Respectfully submitted,

*/s/ Matthew P. Zayotti*
Richard Kirby, BBO# 273600
Matthew P. Zayotti, BBO# 638265
Keegan Werlin LLP
265 Franklin Street
Boston, Massachusetts 02110-3113
(617) 951-1400

Dated: September 28, 2007

**CERTIFICATE OF SERVICE**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 28, 2007.

*/s/ Matthew P. Zayotti*