UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11360-DPW

SUTRA, INC., )
 )
    Plaintiff, )
 )
v. )
 )
ICELAND EXPRESS, EHF, )
 )
    Defendant. )

**AFFIDAVIT OF MATTHEW P. ZAYOTTI, ESQ. IN
SUPPORT OF DEFENDANT ICELAND EXPRESS, EHF'S
SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
– LEAVE TO FILE GRANTED ON SEPTEMBER 28, 2007**

I, Matthew P. Zayotti, Esquire, do hereby state and depose as follows:

1. I am an associate with the law firm Keegan Werlin LLP, and I am an attorney in good standing of the bar of the Commonwealth of Massachusetts.

2. Attorney Richard Kirby and I represent the Defendant Iceland Express, ehf in connection with the above-captioned action.

3. Attached to this affidavit as <u>Exhibit A</u> is a true and accurate copy of the Opinion of Philip Green Regarding Damages produced by the Plaintiff.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___28th___ DAY OF SEPTEMBER, 2007.

_____
Matthew P. Zayotti

> **CERTIFICATE OF SERVICE**
> I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on _September 28, 2007_.
>
> _Matthew P. Fayette_

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
SUTRA INC.,                                                :
                                                           :
    Plaintiff,                                            :
                                                           :  Civil Action No. 04-11360-DPW
v.                                                         :
                                                           :
ICELAND EXPRESS EHF,                                       :
                                                           :
    Defendant.                                             :
------------------------------------------------------------x

**OPINION OF PHILIP GREEN REGARDING DAMAGES**

Confidential: Subject to Protective Order

## I. Introduction

1. I have been retained by The Law Office of Brett N. Dorny, counsel for Sutra, Inc. (herein "Sutra" or "Plaintiff"), to provide an independent and objective opinion of the damages suffered, if any, by Sutra as a result of Iceland Express EHF's (herein collectively "Iceland Express" or "Defendant") alleged breach of contract, and misappropriation of trade secrets. I also have been asked to respond, if necessary, to any expert reports or damage analyses prepared or presented on behalf of the Defendants.

2. Sutra develops and sells software that is used in connection with airline and other reservation systems. Iceland Express is an airline based in Iceland. It offers low cost passenger flights between various European cities. In December 2002, Iceland Express agreed to use a hosted version of Sutra's Airkiosk reservation system. For a variety of reasons this agreement was terminated in July 2003. Sutra asserts that Iceland Express has breached their contract and/or misappropriated its trade secrets through the use of certain features of Sutra's Airkiosk system subsequent to the termination of the agreement.

3. For purposes of my analysis I have assumed that:

   - It is determined that Iceland Express is found to have breached the terms of the Application Service Provider Agreement and/or misappropriated Sutra's trade secrets; and

   - Sutra is legally entitled to obtain damages from these activities.

4. In connection with forming my opinions I have considered the documents and information identified in Exhibit A. To the extent additional information becomes available to me that affects any of the conclusions or opinions herein, I may supplement or amend this report as appropriate.

## II. Qualifications and Compensation

5. I am one of four founding principals in the consulting firm of Hoffman Alvary & Company LLC, located in Newton, Massachusetts. Prior to founding the firm in October 1996, I was a senior manager in the Dispute Analysis and Corporate Recovery Services practice of Price Waterhouse LLP, an international accounting and consulting firm. I obtained my undergraduate degree in history from Rutgers College and received a master of business administration degree with a concentration in accounting from Rutgers Graduate School of Management. I am a Certified Public Accountant licensed to practice by the State of New York. I also am a Certified Management Accountant and have earned the Accredited in Business Valuation ("ABV") designation from the American Institute of Certified Public Accountants.

6. Much of my work focuses on the valuation and licensing of intangibles and intellectual properties. I am regularly involved in the analysis of damages resulting from contract breaches, trade secret thefts and other commercial disputes. My resume, including a list of

my publications and cases in which I have given testimony either at deposition or at trial in the past four years are attached as Exhibit B.

7. My firm, Hoffman Alvary & Company LLC, is being compensated at the rate of $425 per hour for my work on this engagement. My firm's compensation is not affected by the outcome of this matter.

### III. Background

#### A. Plaintiff - Sutra, Inc.

8. Sutra is a privately held company based in Newburyport, Massachusetts. Sutra is the developer of a software system called "Airkiosk." Sutra offers its Airkiosk software to airlines to help them make reservations, check-in passengers, collect revenue and control operations.[1] Its 2005 sales amounted to approximately $1.5 million.[2]

9. Sutra offers its products to customers on either a service or licensing basis. Under the service basis, Sutra will host the customer's system on their server. This model allows customers to access the Airkiosk system functions via the Internet. Under the service arrangement, the customer pays monthly fees based on passenger volume. The licensing model provides customers with a license to use the Airkiosk software and host it on their own computer systems. Under this arrangement, customers make a one-time payment and are granted unlimited, on-site, use of the Airkiosk system. System, support and maintenance are contracted on an annual basis.[3]

#### B. Defendant – Iceland Express

10. Iceland Express, headquartered in Reykjavik, Iceland, was founded in 2002 and began operations in February 2003. Iceland Express operates flight routes to and from Iceland and other European Countries.[4] Iceland Express is privately held and owned by Icelandic Investment Company Fons eignarhaldsfélag hf.[5] In addition to owning Iceland Express, Fons eignarhaldsfélag hf has also acquired several other airlines including, Sterling and Maersk Air. Through Fons eignarhaldsfélag hf's acquisitions, Iceland Express now belongs to one of the largest airline consortiums in Europe.[6] Since its founding in 2002, through 2006, Iceland Express has carried in excess of 850,000 passengers.[7]

---

[1] Complaint, p. 2.
[2] Exhibit C
[3] http://www.airkiosk.com/faq.php
[4] Complaint, p. 1.
[5] http://www.icelandexpress.com/about_us/the_company/
[6] http://www.icelandexpress.com/about_us/press/2005/icelanders_make_move_to_control_scandanavia/
[7] Exhibit D

C. Background of Dispute

11. On December 10, 2002, Sutra, signed an Application Service Provider Agreement with Iceland Express. The agreement gave the Icelandic airline an express right of use to Sutra's proprietary software, the "Airkiosk System." In June of 2003, Sutra detected an external software program interacting with the Airkiosk system.[8] The external program corrupted reservation and record data, as well as passenger list information. In order to prevent further corruption, Sutra limited Iceland Express' access to two of the system's interfaces.[9] In July of 2003, a director of Iceland Express contacted Sutra and informed them of Iceland Express' intent to use an alternative system going forward. Iceland Express requested that they be allowed access to the Airkiosk system while they implemented the new system. Sutra denied the request and followed by sending Iceland Express a notice of breach of the Application Service Provider Agreement. On July 24, 2003, Iceland Express' access to the Airkiosk system was terminated.[10]

12. I understand the alternative system that Iceland Express switched to and currently uses is Ticket.net. Sutra asserts that Iceland Express disclosed confidential, proprietary and trade secret information to Ticket.net regarding the Airkiosk system. Sutra asserts that pursuant to the Application Service Provider Agreement, Iceland Express breached the terms of their agreement.[11]

**IV. Opinions and Related Support**

**Opinion I: Based on lost license revenues, Sutra has suffered lost profits from Iceland Express' activities of $395,000, through May 2007, excluding prejudgment interest.**

13. I understand that Sutra asserts that Iceland Air has breached their contract and/or misappropriated its trade secrets through the continued use of certain applications included in the Airkiosk system. I also understand in cases involving breach of contract and or misappropriation of trade secrets damages can be measured by the plaintiff's lost profits or the defendant's unjust enrichment from its improper activity. Unjust enrichment can be measured as the profits earned by the defendant or cost savings resulting from its in appropriate activities.[12]

14. Sutra's software license agreements provide for payments of $300,000 for rights to use Airkiosk application. These agreements also require the purchase of a maintenance contract that includes a monthly fee of $2,500. Since the contract was terminated in July 2003, Sutra asserts that Iceland Express has been operating its Airkiosk software without paying the

---

[8] Complaint, p. 3.
[9] Complaint, p. 4.
[10] Complaint, p.4.
[11] Complaint, p. 5.
[12] To date, I have not been provided with documents sufficient to determine the amount of Iceland Express' profits, if any, from the use of Sutra's technology.

Confidential: Subject to Protective Order                                        4

proper license fees. Accordingly, a measure of Sutra's lost profits from fees it would have earned if Iceland Express had licensed the Airkiosk software for use on its own system.[13]

15. Exhibit E presents my calculation of the amounts that Iceland Express would have paid to Sutra for a license to the Airkiosk technology. This calculation includes the software license fee of $300,000 as well as the $2,500 per month support fee. This calculation deducts costs equivalent to 17% of lost monthly support fee revenues. These costs are average amount of the "other deductions" reported in Sutra's tax returns from 2003 through 2005.[14] Based on this analysis through May 2007, Iceland Express' unjust enrichment from fees it has not paid for the use of Sutra's Airkiosk system amount to $395,450.

**Opinion II: At minimum, Sutra's damages can be measured based on the Application Service Provider Agreement. Through May 2007, Sutra's lost profits damages amount to at least $147,000 excluding prejudgment interest.**

16. I understand that an alternative measure of damage from Iceland Express' inappropriate activities are Sutra's lost profits. To measure Sutra's lost profits, I have assumed that absent Iceland Express' alleged breach of contract the Application Service Provider Agreement would have continued to renew annually. Accordingly, Sutra's lost profits damages from Iceland Air's alleged breach of contract are the profits it has lost from not providing services under the agreement.

17. On July 24, 2003, the Application Service Provider agreement between Sutra and Iceland Express was terminated. At the time, the agreement had been in place for approximately eight months. The terms of the Application Service Provider agreement provided that Iceland Express pay monthly fees of $1,500 as well as $.20 per passenger in excess of 100,000 per year.

18. Exhibit F presents the monthly revenues that Sutra would have earned if the Application Service Provider Agreement had continued through May 2007. These revenues amount to $69,000. Exhibit G presents the additional per passenger revenues that Sutra would have earned if the Application Service Provider Agreement had continued through December 2006. These revenues amount to $108,000.

19. Exhibit H is my calculation the profits that Sutra would have earned if it the Application Service Provide Agreement had continued through March 2007. This calculation deducts costs equivalent to 17% of lost monthly fee and passenger revenues. These costs are the average amount of the "other deductions" reported in Sutra's tax returns from 2003 through 2005.[15] Such expenses typically include operating costs including expenses that are

---

[13] The license fees and other costs that Iceland Express has not paid due to its breach of contract and/or theft of trade secrets also are a measure of the value of its unjust enrichment. To date I have not been provided with documents sufficient to determine the value of any offsets, if any, to these cost savings.
[14] See Exhibit C
[15] See Exhibit C

considered "incremental" sales. Based on this calculation, Sutra's lost profits from Iceland Express' breach of contract amount to $147,000, excluding prejudgment interest.

## V. <u>Exhibits</u>

20. I expect to use this report, the attached exhibits and the reports prepared by Iceland Express' damages expert in support of any testimony that may be offered at trial. In addition, documents and deposition testimony listed in Exhibit A may also be used as exhibits. However, a final determination of the documents and exhibits that may be used at trial has not been made. Additional demonstrative exhibits to be used at trial will be provided in accordance with the schedule provided by the Court.

_____
Philip Green

_____5/25/07_____
Date

Exhibit A

## DOCUMENTS REVIEWED

| Description | Beginning Bates # | | Ending Bates # | | Date |
|---|---|---|---|---|---|
| Airkiosk System Application Service Provider Agreement | n/a | n/a | n/a | n/a | n/a |
| Court Document: Complaint | n/a | n/a | n/a | n/a | 6/15/2004 |
| Court Document: Defendant Iceland Express, EHF's Supplemental Response to Interrogatories | n/a | n/a | n/a | n/a | January-07 |
| Interrogatories pp. 2-3 | n/a | n/a | n/a | n/a | n/a |
| Deposition of Omar Orn Olafsson, April 11, 2007 | n/a | n/a | n/a | n/a | 4/11/2007 |
| Iceland Express Financials(in Icelandic) | KW | 001109 | KW | 001119 | 2003 |
| Iceland Express Financials(in Icelandic) | KW | 001120 | KW | 00133 | 2004 |
| Iceland Express Financials(in Icelandic) | KW | 001134 | KW | 001149 | 2005 |
| Sutra, Inc.'s Tax Return for 2003 | S | 1005 | S | 1007 | 11/30/2004 |
| Sutra, Inc.'s Tax Return for 2004 | S | 1008 | S | 1010 | n/a |
| Sutra, Inc.'s Tax Return 2005 | S | 1011 | S | 1013 | n/a |
| Airkiosk System and License Hosting Agreement | n/a | n/a | n/a | n/a | n/a |

Confidential: Subject to Protective Order

Exhibit B

## PHILIP GREEN

| | |
|---|---|
| **POSITION** | Principal of Hoffman Alvary & Company LLC |
| **EDUCATION** | B.A., History, 1984 - Rutgers College<br>M.B.A., Accounting, 1987 - Rutgers Graduate School of Management |
| **PROFESSIONAL AND BUSINESS HISTORY** | 1994 - 1996: Price Waterhouse LLP, Manager/Senior Manager, Dispute Analysis and Corporate Recovery Services, New York<br><br>1988 - 1994: Executive Consultant, Peterson Consulting Limited Partnership, New York<br><br>1987 - 1988: Staff Accountant, Ernst & Whinney, New York<br><br>1984 - 1985: Paralegal, Anderson, Russell, Kill & Olick, Washington, D.C. and New York<br><br><u>Dispute Analysis Consulting</u> - Accounting and financial analysis assistance in connection with litigation matters focusing on intellectual property infringements, contract breaches, business interruption and construction delay claims. Work has included the calculation of lost profits and other economic damages, forensic and investigative accounting and evaluation of royalties. This assistance has been provided to a broad range of industries including: computer software, banking, insurance, pharmaceutical, steel and other manufacturers as well as service organizations. Served as expert witness on damages and accounting related issues.<br><br><u>Other Consulting</u> – Engagements related to intangibles have included preparation of valuations in connection with purchases, sales and donations, royalty auditing and development of patent and intellectual property licensing strategies. Other consulting assistance has included business valuations, evaluations of real estate appraisals, and implementation of accounting systems and assistance with the operation and management of bankrupt or troubled companies. |
| **PROFESSIONAL AND BUSINESS AFFILIATIONS** | Certified Public Accountant - Registered to Practice by the State of New York<br>Certified Management Accountant<br>Accredited in Business Valuation by the AICPA<br>Member, American Institute of Certified Public Accountants<br>Member, New York State Society of Certified Public Accountants<br>Member, Institute of Certified Management Accountants<br>Member, Licensing Executive Society |

Exhibit B

# Philip Green

## Testimony – January 2003 - Present

Granite City Electric Supply Co., Inc. v. Munro Electric Supply, et al. – Superior Court, Suffolk County, Massachusetts – Deposition

*JumpSport, Inc. v. Hedstrom Corporation et al. – Federal Court, Northern District of California – Deposition

*France Telecom S.A. et al. v. Novell, Inc. – Federal Court, District of Delaware - Deposition

Pentech Financial Services, Inc. v. CMGI, Inc. et al. – Federal Court, Northern District of California – Deposition

National Datacast, Inc. v. Dotcast, Inc. – American Arbitration Association, Washington, D.C. - Deposition and Testimony before Arbitration Panel

TIC Holdings LLC, v. Greenwald et al. – New York State Supreme Court – Trial

Probst v. Carlisle & Company, Inc. – American Arbitration Association, Boston, Massachusetts – Testimony before Arbitrator

John C. Turner as Trustee for the Estate of Maine Poly, Inc. v. JPB Enterprises, Inc. et al. – Bankruptcy Court, District of Maine – Deposition and Trial before Judge Haines

SpaceLogic, Ltd. v. Vinci Airports Worldwide, Inc. – Federal Court, Eastern District of New York – Deposition

Billings v. GTFM LLC, et al, - Superior Court, Suffolk County, Massachusetts – Deposition and Trial before Judge Botsford

*Ecentives, Inc. et al. v. Coupons, Inc., – Federal Court, District of Maryland – Deposition

Amcorp Trust et al v. WG Trading Co. LP et al., – Federal Court – Southern District of New York – Deposition

QSP, Inc. v. Gibson – Court of Common Pleas, Cuyahoga County, Ohio, - Deposition and Trial before Judge Gaul

*Scansoft, Inc. v. American Future Tech, Inc. – American Arbitration Association, Boston, Massachusetts - Testimony before Arbitrator

*Fibermark, Inc. v. Brownville Specialty Paper Products, Inc. – Federal Court, District of New York – Deposition and Trial

Fitzgerald v. Sovereign Bank – Superior Court, Suffolk County Massachusetts, - Trial before Judge Sanders

*Modern Products, Inc. v. Certainteed Corporation – Federal Court, District of Pennsylvania – Deposition

*Diomed, Inc. v. AngioDynamics, Inc and Vascular Solutions, Inc. – Federal Court, District of Massachusetts – Deposition and Trial before Judge Gorton

* Matter involving intellectual property
Confidential: Subject to Protective Order

Exhibit B

# Philip Green
## Testimony (Continued)

*PHT, Inc. v. CRF, Inc. and invivodata, Inc. – Federal Court, District of Delaware – Deposition

*Systems Unlimited, Inc. v. Cisco – Federal Court, District of Florida – Deposition

*Technologies SA v. Cyrano, Inc. – Federal Court, District of Massachusetts – Trial before Judge Tauro

*Bavarian Nordic AS v. Acambis Plc – International Trade Commission – Deposition

*Ampex, Inc. v. Eastman Kodak Company – Federal Court, District of Delaware – Deposition

BPR Group, Inc. et al. v. Bendetson et al. – Superior Court, Suffolk County Massachusetts, - Trial before Judge Van Gestel

*24 Seven, Inc. v. Gromwell Group, Inc. et al. – New York State Supreme Court – Deposition and Trial before Special Referee Louis Crespo

*Honeywell International, Inc. et al. v. United States et al. – U.S. Court of Federal Claims – Deposition and Trial before Judge Braden

*Innovative Solutions & Support, Inc. v. Kollsman, Inc. et al. – Federal Court, Western District of Tennessee – Deposition

Ontario Securities Commission on behalf of the United States Securities and Exchange Commission v. Renert and Hawthorne Sterling & Co. – Ontario Superior Court of Justice - Deposition

## Publications

"Damage Measures in Patent Infringement Actions", J. Kinrich, S. Lakshmanan, Philip Green, and Alan Seigerman, *Practicing Law Institute Second Annual Institute for Intellectual Property Law*, September 1996, pages 167-189.

"Calculating Damages the *Rite* Way: Applying the Federal Circuit's Decision in *Rite Hite Corp. v. Kelley Co., Inc.*", Philip Green and Martin M. Zoltick, *International Legal Risk Management*, Vol. V-12, December 1996, pages 21-30.

"Calculating Damages the *Rite* Way", Philip Green and Martin M. Zoltick, *Intellectual Property Today*, Vol. 4, No.7, July 1997, Page 6

\* Matter involving intellectual property
Confidential: Subject to Protective Order

Exhibit C

## Sutra's Inc.'s
## Ordinary Income as Reported in Tax Returns 2003-2005

For the Years Ended December 31,

| | 2003 [1] | | 2004 [2] | | 2005 [3] | | Total | |
|---|---:|---:|---:|---:|---:|---:|---:|---:|
| Revenue | $1,019,007 | | $1,135,245 | | $1,458,934 | | $3,613,186 | |
| COGS | 0 | | 0 | | 0 | | 0 | |
| Gross Profit | 1,019,007 | | 1,135,245 | | 1,458,934 | | 3,613,186 | |
| **Expenses** | | | | | | | | |
| Compensation of Officers | 120,000 | 11.8% | 140,000 | 12.3% | 280,000 | 19.2% | 540,000 | 14.9% |
| Salaries & Wages | 202,250 | 19.8% | 287,050 | 25.3% | 263,716 | 18.1% | 753,016 | 20.8% |
| Repairs & Maintenance | 0 | 0.0% | 4,833 | 0.4% | 7,252 | 0.5% | 12,085 | 0.3% |
| Rent | 13,992 | 1.4% | 62,291 | 5.5% | 69,063 | 4.7% | 145,346 | 4.0% |
| Taxes & Licenses | 24,203 | 2.4% | 35,456 | 3.1% | 38,877 | 2.7% | 98,536 | 2.7% |
| Depreciation | 65,117 | 6.4% | 33,648 | 3.0% | 22,047 | 1.5% | 120,812 | 3.3% |
| Advertising | 500 | 0.0% | 5,000 | 0.4% | 10,030 | 0.7% | 15,530 | 0.4% |
| Employee Benefit Programs | 20,176 | 2.0% | 36,332 | 3.2% | 24,220 | 1.7% | 80,728 | 2.2% |
| Other Deductions | 204,992 | 20.1% | 174,787 | 15.4% | 243,725 | 16.7% | 623,504 | 17.3% |
| Total Expenses | 651,230 | | 779,397 | | 958,930 | | 2,389,557 | |
| Ordinary Income | 367,777 | | 355,848 | | 500,004 | | $1,223,629 | |

**Sources/Notes:**
[1] S1005-S1007
[2] S1008-S1010
[3] S1011-S1013

Confidential: Subject to Protective Order

Exhibit D

## Boarded Iceland Express Passengers 2003-2006 [1]

| | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 [2] | n/a | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 17,162 | 12,747 | 13,026 | 11,309 | 12,000 | 74,446 |
| 2004 | 10,745 | 12,175 | 13,499 | 23,894 | 26,308 | 25,951 | 29,175 | 30,804 | 24,842 | 24,915 | 20,604 | 14,472 | 257,384 |
| 2005 | 12,740 | 12,005 | 14,037 | 13,317 | 19,568 | 28,594 | 33,966 | 33,713 | 25,029 | 16,573 | 15,962 | 17,074 | 242,578 |
| 2006 | 12,804 | 11,990 | 14,176 | 18,516 | 26,987 | 42,160 | 50,355 | 48,252 | 28,948 | 23,382 | 21,960 | 19,801 | 319,331 |

Total Boarded Passengers  893,739

*Sources/Notes:*
[1] Defendant's Supplemental Responses to Interrogatories, pp. 3-4.
[2] From February 2003 through July 2003, Iceland Express boarded a total of 8,200 passengers.

Confidential: Subject to Protective Order

Exhibit E

## Sutra's Lost Profits
## Based on Airkiosk License and Hosting Agreement

| | | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 | [1] | n/a | n/a | n/a | n/a | n/a | n/a | n/a | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | 12,500 |
| 2004 | | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 2005 | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 2006 | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 2007 | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | 12,500 |
| Total Fees | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 7,500 | 7,500 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 115,000 |
| Cost of Service | [2] | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,275 | 1,275 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 19,550 |
| Lost Service Fee Profits | | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 6,225 | 6,225 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 95,450 |
| | | | | | | | | | | | | | Upfront Payments [3] | 300,000 |
| | | | | | | | | | | | | | Total Lost Profits | $395,450 |

*Sources/Notes:*
[1] Monthly support and maintenance costs. Airkiosk License and Hosting Agreement, p. 19.
[2] Sutra's Cost of Service is calculated as 17% of revenues based on "Other deductions" from Sutra's tax returns for 2003-2005. See Exhibit C.
[3] Includes $300,000 in fees for the license to the Airkiosk System.
The $300,000 includes: $100,000 upon execution of the agreement, $100,000 upon installation of the system and $1000,000 at the end of the warranty period. See Airkiosk License and Hosting Agreement, p. 18.

Confidential: Subject to Protective Order

Exhibit F

## Iceland Express Fees Due Sutra 2003-2007 Based on Application Service Provider Agreement [1]

| | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 [2] | n/a | n/a | n/a | n/a | n/a | n/a | n/a | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| 2004 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| 2005 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| 2006 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| 2007 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | 7,500 |
| | | | | | | | | | | | Total Monthly Fees Due | | $69,000 |

*Sources/Notes:*
[1] Airkiosk Application Service Provider Agreement, p. 9.
[2] Assumes Iceland Express paid Sutra in accordance with the terms of the Application Service Provider Agreement for December 2002 through July 2003.

Confidential: Subject to Protective Order

Exhibit G

## Iceland Express' Fees for Excess Passengers

|  |  | 2003 | 2004 | 2005 | 2006 | Total |
|---|---|---|---|---|---|---|
| Boarded Passengers | [1] | 66,244 | 257,384 | 242,578 | 319,331 | 885,537 |
| Passengers in Excess of 100,000 |  | 0 | 157,384 | 142,578 | 219,331 | 519,293 |
| Passengers in Excess of 9,000 per month | [2] | 21,244 | 0 | 0 | 0 | 21,244 |
| 20 Cent Charge for Each Passenger in Excess of 100,000 | [3] | $0.20 | $0.20 | $0.20 | $0.20 |  |
| Total Fees for Excess Passengers |  | $4,249 | $31,477 | $28,516 | $43,866 | $108,108 |

*Sources/Notes:*
[1] See Exhibit D. 2003 passengers boarded are for August through December 2003.
[2] For 2003, passengers in excess of 9,000 per month are calculated assuming 45,000 passengers would be allowed
[3] Under the agreement for August through December 2003. See Airkiosk Application Service Provider Agreement, p. 9.

Confidential: Subject to Protective Order

Exhibit H

## Sutra's Lost Profits from Lost Fees Based on Application Service Provider Agreement

|  |  | 2003 | 2004 | 2005 | 2006 | 2007 | Total |
|---|---|---|---|---|---|---|---|
| Monthly Fees | [1] | $7,500 | $18,000 | $18,000 | $18,000 | $7,500 | $69,000 |
| Excess Passenger Fees | [2] | 4,249 | 31,477 | 28,516 | 43,866 | 0 | 108,108 |
| Total Fees |  | 11,749 | 49,477 | 46,516 | 61,866 | 7,500 | 177,108 |
| Sutra's Cost of Service | [3] | 1,997 | 8,411 | 7,908 | 10,517 | 1,275 | 30,108 |
| Lost Profits |  | $9,752 | $41,066 | $38,608 | $51,349 | $6,225 | $147,000 |

*Sources/Notes:*
[1] See Exhibit F. Assumes all payments from the date of execution of the agreement, December 10, 2002, through the date of termination, July 24, 2003, were made to Sutra.
[2] See Exhibit G.
[3] Sutra's Cost of Service is calculated as 17% of revenues based on "Other deductions" from Sutra's tax returns for 2003-2005. See Exhibit C.

Confidential: Subject to Protective Order